THIRD NATIONAL BANK *v.* SCRIBNER.

(*Nashville*, December Term, 1938.)

Opinion filed July 1, 1939.

16

E. J. WALSH and CORNELIUS, McKINNEY. & GILBERT, all of Nashville, for complainant.

SAMUEL N. HARWOOD and THOMAS H. MALONE, both of Nashville, for defendant Elizabeth Wilson Cates Scribner.

DORA A. BLAND, of Nashville, for defendant Elizabeth Wilson Cates Scribner as regular guardian of minor defendants James Wilson Cates and Mary Elizabeth Cates.

TRABUE, HUME & ARMISTEAD, of Nashville, for defendants Nashville Trust Co., Richard T. Wilson, Sr., and John B. Wilson.

DAN E. McGUGIN, JR., of Nashville, guardian *ad litem* for minor defendants James Wilson Cates and Mary Elizabeth Cates.

TYNE, PEEBLES, HENRY & TYNE, of Nashville, for defendant National Life & Accident Ins. Co.

18

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is an appeal of Mrs. Elizabeth Wilson Cates Scribner, the only child of testator, from a decree of the chancellor construing the will of R. Morris Wilson and several codicils to that instrument.

We state so much of the contents of these papers as is required in consideration of the points in controversy.

By his will of October 16, 1936, the testator appointed the Nashville Trust Company and his daughter executors; gave certain pieces of jewelry to his grandson, James Wilson Cates, and a sum of money equivalent in value to his granddaughter, Elizabeth Wilson Cates; gave his automobile and household effects to his daughter; and further gave to his daughter the sum of $10,000 payable out of insurance at his death and the sum of $5,000 when she reached the age of forty years. The will then designated the Nashville Trust Company as testamentary trustee and left the remainder of his estate to said trustee. Out of the income the daughter was to be paid $800 a month during her life. Income above that charge was to be used under her direction for the support and education of her children and the residue of the income, except a small provision for a servant, to be re-invested and held with the *corpus* for the eventual benefit of the children. Power was given to the testator's daughter by her will to dispose of certain property owned by him on Fifth Avenue and the will conferred upon her the power of consent to sales, mortgages, etc., of the trust property and on her death this power of consent passed to her children upon their reaching maturity.

After this will was executed, the record discloses that Mrs. Cates contracted a second marriage over the opposition of her father and much to his resentment. By a codicil to his will dated January 1, 1937, each and every one of the foregoing provisions contained in the will for the benefit of the daughter was separately and wholly revoked, together with the right to dispose of the Fifth Avenue property by will and the power of consent with reference to sales, mortgages, etc., of the trust property. The codicil gave all of the testator's property to the Nashville Trust Company in trust for the benefit of his grandchildren.

Two other codicils were made to the will on May 2, 1937, and June 7, 1937. These two codicils are identical. For the present, it is sufficient to say that the second and third codicils substituted the Third National Bank for the Nashville Trust Company as trustee. We will later refer to other language in the two codicils pressed upon our consideration by counsel.

There seems little room for controversy about testator's will as it stood after the addition of the first, second and third codicils. The trust created by the will was continued, as modified by Codicil No. 1, although the trustee was changed. The grandchildren were the sole beneficiaries of the trust. The benefits under the trust given to the daughter by the will were revoked, as were all other benefits and powers given to her.

The record further discloses that between June 7, 1937, and January, 1938, the testator and his daughter became reconciled and, in January, 1938, a fourth codicil was executed, in part, as follows:

"I, R. M. Wilson of Nashville, Tennessee, being of sound mind declare this to be a codicil to my last will made in October, 1936.

"For the love and affection I have for my daughter Elizabeth Wilson Scribner, I direct that the Executor or Executors and the Trustee or Trustees, later to be designated and appointed by me, or by my brother Richard T. Wilson, should my death occur before I have made such appointment, shall pay out of the net proceeds of my Estate the sum of Eight Hundred dollars ($800.00) per month, a total of nine Thousand six hundred dollars per annum ($9,600.00). The first of said payments to become due and payable from the date of my death.

"My daughter shall have the use and occupancy of my home on the Franklin Road with what furnishings therein belonging to me, for her life, free of rental, and I direct that the Trustee or Trustees pay, from the funds of my estate, the taxes and insurance thereon. I direct that the Executor or Executors turn over to my daughter Elizabeth $1,000 in cash or securities."

It will be observed that testator by the fourth codicil restored the income of $800 a month to his daughter originally provided by the will. That he gave her his home on the Franklin Road with the furnishings, for life, and provided that the trustee should pay taxes and insurance on the same. The fourth codicil did not restore the power to dispose of the Fifth Avenue property by will, nor the power of consent with reference to mortgages and sales of the trust property, nor the two legacies of $10,000 and $5,000 each, but gave to the daughter $1,000.

By the fourth codicil the testator gave in trust for the benefit of his brother, Richard T. Wilson, and children

of the latter, property said to be of the value of $100,000. The value of the entire estate is said to be $800,000.

The fourth codicil also contains these provisions:

"I have confidence in the integrity and ability of my brother Richard, and if I have not appointed an Executor and Trustee before my death, it is my desire, and I hope he will consent to act, as co-executor, and as Co-Trustee, with the Executor and Trustee, whom I have given him the power to designate and appoint. The reference to Co-Executor and Co-Trustee, refers to that part of my Estate left for the benefit of my daughter Elizabeth, and my two Grand Children—And I do not require that my brother give bond or bonds."

Previously in the fourth codicil, introductory to the bequest of the income for the benefit of his daughter, testator had directed that such income be paid by "the Executor or Executors and the Trustee or Trustees, later to be designated and appointed by me, or by my brother Richard T. Wilson, should my death occur before I have made such appointment." Other provisions of the fourth codicil are these:

"Should I die with out having appointed the said Executor and Trustee it is my wish that the Executor and Trustee designated and appointed by my brother seriously consider his opinions as he is more familiar with my property and my wishes than anyone.

"I further direct that whether my brother does or does not act as Co-Executor or Co-Trustee I desire and direct that his written consent and approval shall be secured before any sales of real or personal property, or mortgages made on the property, and leases made. After the death of my brother I desire the written consent of my daughter, and my Grand Children if of age—

. . .

"I further wish to emphasize that the *corpus* and income, my home and furnishings which my daughter Elizabeth is to enjoy under this instrument is in every way protected by the Spend Thrift trust as set out in my will of October, 1936."

The foregoing, which is a fair statement of the testamentary papers before us for construction, insofar as they relate to testator's daughter, does not present a situation in which it is difficult to gather the testator's meaning. His intent seems clearer when we take into consideration surroundings indicated by the record.

The testator obviously was devoted to his daughter. Quite obviously he disliked her second husband and was indignant at her second marriage. While in this frame of mind, testator cut his daughter off from any participation in his estate. Later, he became reconciled to his daughter and made another bountiful provision for her under the fourth codicil. The record, however, does not disclose that testator had acquired any great affection for the second husband. The fourth codicil indicates that testator had not regained that confidence in his daughter's judgment that she enjoyed before her last marriage. We see nothing in any of these testamentary papers, nor in the surroundings of the parties, to indicate that the testator desired his daughter to take any other or greater portion of his estate or further powers than are specifically set out in the last codicil to his will.

Counsel for the daughter contend that what seems to be inadvertent language in Codicils 2 and 3 had the effect of reinstating the original trust in favor of the daughter revoked by Codicil 1. They further contend that the declaration in Codicil 4 that the instrument is "a codicil

to my last will made in October, 1936," without mention of the intervening codicils, is a republication of the original will and an implied revocation of Codicils 1, 2 and 3. These contentions we discuss in order.

The second and third codicils to the will proceed as follows:

"I, R. Morris Wilson of Nashville, Tennessee, being of sound mind and disposing memory, do hereby make and publish this, a codicil to all last wills and testaments heretofore made and executed by me at any time, . . . especially to my last will and testament dated October 6, 1936, and witnessed by Martha Stogner and Edna Jewell, and the codicil thereto, dated January —, 1937, all prepared by my attorney, Samuel N. Harwood, and to all other last wills and testaments, and codicils made and executed by me; and I hereby modify, change and revoke all my said last wills and testaments, and all the codicils thereto, in the following particulars, towit."

The codicil then goes on to refer to testator's "last will and testament dated October 6, 1936, and the aforesaid codicil to all my last wills and testaments dated January —, 1937," and modifies, changes and revokes said instruments "insofar as I nominated and appointed the Nashville Trust Company of Nashville, Tennessee, executor of my estate and of my said last wills and testaments; and I hereby nominate and appoint the Third National Bank, of Nashville, Tennessee, executor of this, my last will and testament, and of my estate, and I also nominate and appoint said Third National Bank, of Nashville, Tennessee, testamentary trustee of my daughter, Elizabeth Wilson Cates Scribner, formerly Cates, and of my grandchildren, James Wilson Cates, son of my daughter, Elizabeth Wilson Cates, and Mary Elizabeth Wilson

24

Cates." The argument is that the foregoing language appointing the Third National Bank testamentary trustee of the daughter was effective to revive the trust created for her benefit in the original will and to revoke the so-called disinheritance Codicil No. 1.

This is too strong an inference. The will and the first three codicils were prepared by testator's careful attorney. We are unable to believe that if testator had at this time intended to restore his daughter to the benefits of the trust, the matter would have been left to such doubtful implication. It may be assumed, the three codicils being prepared by the same careful hand, had such a thing been intended, a restoration of the daughter to the testator's bounty would have been declared in language something like as clear and precise as the language used in her disinheritance. The Third National Bank was appointed testamentary trustee but the trust was modified by Codicil 1. The intention was to substitute the Third National Bank for the Nashville Trust Company. The Nashville Trust Company was originally described as trustee for the daughter and the grandchildren. It was removed and the Third National Bank designated to this office. The language relied on by counsel, it seems to us, was merely descriptive of the office, though somewhat inappropriate. Such language did not reinstate the daughter as a beneficiary of the trust.

 The second contention made for the daughter is that the language of the fourth codicil declaring that instrument "to be a codicil to my last will made in October, 1936," by omitting reference to the intervening codicils, worked a revocation of such intervening codicils and republished only the original will.

It seems to us that the best considered authorities take a contrary view.

There is an elaborate note in 51 A. L. R., beginning on page 652, upon the subject of implied revocation. From a review of the cases the author reaches these conclusions:

"One codicil does not revoke another unless it is clear that the testator intended that it should do so. The legal presumption is against such revocation, unless they are so inconsistent that they cannot stand together.

"Therefore, an intermediate codicil is not impliedly revoked by a later codicil, in terms confirming the will, but making no mention of the earlier codicil, but if the later codicil makes a disposition of certain property inconsistent with a disposition made in the former codicil, the former is revoked." 51 A. L. R., 728.

In Schouler on Wills, etc., Sixth Edition, section 689, it is said:

". . . if the will which is republished had codicils added to it, the presumption arises that the testator means to ratify and confirm the will as amended by its codicils, and not otherwise; though the true intent of the transaction should control, if discoverable."

In 68 C. J., p. 867, we find the following:

"A codicil operates not only as a new adoption of the will to which it refers, but also as a revocation of an intermediate will, and the fact that there intervenes between the execution of the will to which the codicil refers and the execution of the codicil itself another will executed by the testator, which in terms revokes the first will, does not preclude revival of the first will. There is a distinction between an intermediate will and an intermediate codicil in this respect, and where the testator by a

codicil confirms his will, the will together with all codicils, is ordinarily taken to have been confirmed. . . . A mere reference to the date of the original will is no indication of the intention to deprive all instruments other than the original will itself of any force; in fact such a reference to a will does not effect a revocation of the antecedent codicils, but is a ratification of the will as modified by the codicils. . . ."

Opposed to the foregoing, it is stated in Page on Wills, Second Edition, section 512, that:

"A reference in a codicil to a will does not include a prior codicil so as to incorporate it by reference, especially if reference is made to the will by its date. . . . Still less should a second codicil which refers to the will by its date, but which does not refer to an intervening codicil, operate as an incorporation of an intervening codicil, although it has been held to incorporate it."

It is to be doubted if authorities cited by Mr. Page for the broad statement above quoted fully sustained his text. We proceed to consider a few of the leading cases cited by counsel for the parties hereto. For the daughter we are referred to *Croker* v. *The Marquis of Hertford,* 4 Moore, P. C., 339, 13 English Reprint, 334. In that case the testator made several codicils to his will, one of which was signed but not attested, and therefore invalid. By a later codicil testator "ratified and confirmed his said will and codicils." It was held that this general reference was not sufficient to identify and incorporate the unattested codicil.

It seems to us that the ruling in that case rested on the proposition that the unattested codicil, being invalid, was never a part of the will. Bearing out this idea, the opinion quoted Lord Eldon in *Smart* v. *Prujean,* 6 Ves.,

561, as saying: "The rule of law is, that an instrument properly attested, in order to incorporate another instrument not attested, must describe it so as to be a manifestation of what the paper is, which is to be incorporated, in such a way, that the Court can be under no mistake."

Reliance is placed upon the case of *Burton* v. *Newbery* [1875], 1 Ch. D., 234. The headnote to that case states "A codicil, which refers to a will of a particular date, and does not refer to a subsequent codicil, does not operate as a republication of that subsequent codicil." The opinion in this case is by Jessel, M. R., and to one not so familiar with English decisions appears to lend weight to the contention in support of which it is pressed upon us. The case, however, is fully distinguished by a subsequent English case hereafter mentioned.

We are also referred to *In the Goods of Reynolds,* 3 Probate and Divorce Cases, 35. In that case the testator executed a will in 1866 and later a codicil thereto. Still later he executed another will in which he revoked all previous testamentary papers. After all this he executed another paper which was entitled "This is a codicil to the will of Bryan Reynolds, dated May, 1866." It was held that the last testamentary paper or codicil did not reinstate the codicil to the will of 1866.

That decision, however, is easily explained on the theory that both the original will and the first codicil had been revoked, and having been revoked, neither could be revived except by express reference.

One of the leading cases is *Green* v. *Tribe* [1878], 9 Ch. D., 231. The testatrix made a will creating a trust under which a nephew and a niece were beneficiaries. By a codicil she revoked the provisions for this particular nephew and niece. A later codicil was added to the will,

not referring to the first codicil. It was insisted there, as here, that this omission revoked the first codicil and reinstated the nephew and niece as beneficiaries of the trust.

The court stated one of the questions to be decided as follows:

''Assuming a testator to have made a will, to have made a first codicil modifying that will, to have made a second codicil describing his will by the date which the original instrument bore, and confirming that will, but observing an absolute silence with regard to the first codicil, what is the effect of the second codicil? Does it revive the first will as it originally stood, or does it confirm the original will as modified by the first codicil? . . . The question, therefore, which I have to consider is whether the reference to the date of the original will is an indication of the intention to deprive all instruments other than the original will itself of any force—in fact, whether such a reference to a will effects a revocation of the antecedent codicils. To this inquiry a series of cases appears to afford a clear negative answer.''

The court sustains its conclusion by a review of numerous cases. Among others, *Crosbie* v. *MacDowal*, 4 Ves., 610, in which it was held that the ratification of a will described by date was a ratification of that will as modified by the codicils and did not revoke the codicils made between the date of the will and the confirming codicil.

*In the Goods of De La Saussaye*, 3 L. R., Probate and Divorce Cases, 42, in which by a final codicil testator republished his will describing it by date, it was held that this express reference to the will by date impliedly ·revived intervening codicils, and in which the court held that the intervening codicils were to be deemed parts of

the will and were themselves confirmed by the ratification of the will of which they were modifications.

The court was at pains to distinguish the case of *Burton* v. *Newbery, supra.* Since much stress is placed upon *Burton* v. *Newbery* in this case and since it is one of the authorities upon which the text of Mr. Page is founded, it seems proper to set out what the English Court had to say of it. After a discussion of numerous cases which it followed, the court in *Green* v. *Tribe* had this to say:

"So far the current of authority seems to run smoothly. But in the recent case of *Burton* v. *Newbery,* the present Master of the Rolls took a different view. There the testator made a will before the Wills Act, under which A. and B. took shares of the proceeds of his real estate. By a codicil made after the Wills Act, he devised subsequently acquired realty on the trusts of his will. This codicil was attested by A. and B., who consequently were incapable of taking their shares under the codicil. By a second codicil, described as a codicil to his will dated the 1st of April, 1839, he gave a pecuniary legacy, and said nothing as to his first codicil. In this state of facts the Master of the Rolls held that the second codicil did not operate as a republication of the first. The only reference, he said, was to a will bearing date a certain day, that is, as I understand it, to a described instrument which excludes instruments of subsequent dates. It appears to me that the Master of the Rolls intended by this judgment to decide only that where recourse is had to a subsequent codicil to give vigour to an earlier one, a mere reference to the will by its date will not operate upon the earlier and inoperative codicil so as to set it up, and that he did not intend (as has been argued before me) to lay down that the confirmation of a will re-

ferred to by its date would revoke a preexisting and valid codicil. Accordingly, I find him dissenting from the case of *Gordon* v. *Lord Reay* (5 Sim., 274) but referring without disapproval to the earlier case of *Crosbie* v. *MacDowal.*

"The two classes of cases differ essentially. In the one the earlier codicil has a proper force of its own; in the other the earlier codicil must if left to itself fail. In the one class the question is, does the later codicil revoke the earlier and operative one; in the other class you inquire, does the later codicil set up the earlier and inoperative one? To the one class of cases the principle applies that a clear disposition is not to be revoked except by clear words; to the other class this principle has no application: *Doe* v. *Hicks* (8 Bing., 475); *Farrer* v. *St. Catherine's College* (4 Law Rep., 16 Eq., 19).

"I conclude, therefore, that the decision of the Master of the Rolls in *Burton* v. *Newbery,* does not touch the case before me, and was not intended to touch the class of cases to which it belongs."

Concluding its discussion in *Green* v. *Tribe,* the court further said:

"The character of a codicil is very peculiar. Its nature is not substantive but adjective. It is, as Mr. Justice BLACKSTONE describes it, 'A supplement to a will, or an addition made by the testator, and annexed to and to be taken as part of a testament.' A reference to the will therefore in itself carries with it a reference to that which is merely a supplement to or annexed to the will itself; and the mere fact that the testator describes the will by a reference to its original date, does not seem to me sufficient to exclude the inference that the will referred to is the will as modified by the codicils."

The reasoning of *Green* v. *Tribe* and the cases which it follows seems to us entirely sound. The authority of that case is in no way weakened by the circumstance that the last codicil had no particular effect or was inoperative. It was made, as the court pointed out, to put some after-acquired property into the trust, the testatrix seeming to think that was necessary. The property put into the trust passed under the residuary clause of the original will as modified by the first codicil. Therefore the result would have been the same if the second codicil had not been added. The decision certainly, however, held and, as we think, demonstrated that the final codicil did not revoke the first codicil because it made no specific mention of the first codicil.

██ Upon these authorities, therefore, and others which it is not necessary to review, we are of opinion that the reference in the fourth codicil to the original will by its date was a republication of that instrument together with all intervening codicils, although specific mention of such intervening codicils was not made.

██ ██ It is also urged that the first codicil is revoked by reason of the inconsistency in the provisions of the fourth codicil and of the first codicil. It is true that a later codicil may work a revocation of an earlier codicil inconsistent therewith but only to the extent of the conflict or inconsistency. There was no inconsistency between the fourth codicil and the first codicil insofar as the first codicil revokes the gift of $10,000 and $5,000 to the daughter and insofar as it revokes her power of consent with reference to sales and mortgages of the trust property and insofar as it revokes her right to dispose of the Fifth Avenue property by will, and perhaps in other minor details.

Before leaving this branch of the case we notice *Mc-Leod* v. *McNab* [1891], App. Cas., 471. Testator made a will in which there was a residuary bequest to Delhousie College in Nova Scotia and appointed executors. By a codicil he revoked the bequest to Delhousie College and appointed another executor. Another codicil confirmed the original will by date and also referred to it as the will in which Thompson was appointed executor. By the first codicil McNab was appointed executor so, when in the second codicil, reference was made to the will in which Philip Thompson was executor, the court said:

". . . it is obvious that he (testator) could not be referring to the will, which it is contended on behalf of the appellant was then in existence, consisting not only of the document of the 17th of June, 1880, but of the codicil of the 17th of June, 1882; because looking at the will so constituted, it was not the fact that the testator had appointed Mr. Thompson, but he had appointed Mr. McNab."

In the course of the decision in this case, in line with what we have heretofore said, the court used this language:

"It has been decided in many cases that the intention must be found in the instrument itself; and it may be taken that the recent decisions have established that a mere reference to the document intended to be dealt with, whether will or codicil, by its date, is not sufficient in itself. The date is an important element in the consideration, but it is not to be taken by itself; it becomes necessary to look to the context, and to anything else in the document which may explain whether the intention of the testator was to confine the action of the testamentary

disposition under consideration of the document of that date, or to extend it to something more.''

Apart from the foregoing, the testamentary papers before us within themselves seem to indicate an intention on the part of this testator by the fourth codicil to make provision for his daughter substitutional in character rather than accumulative. Of course we are aware that the presumption is to the contrary. However, there is distinguished authority to support the view that a gift by a later testamentary instrument to one having received a gift in an earlier testamentary instrument will be treated as revocatory or substitutional if such an intention of the testator can be gathered from the last paper or all the papers together. *St. Albans* v. *Beauclerk*, 2 Atk., 636, 26 Eng. Rep., 780 (by Lord Hardwicke); *Swain's Estate,* 29 Pa. Dist. R., 361.

It seems to us from consideration of all the testamentary papers before us that testator intended by the fourth codicil to change the entire testamentary scheme outlined for the benefit of his daughter in the original will. By the fourth codicil he gave her the same income of $800 a month that he gave her in the original will. It is not contended that he intended to duplicate this income by the fourth codicil. In the original will he gave her all his household effects, including furniture and furnishings. In the fourth codicil he gave her the use of these furnishings together with his house for life. He could not, of course, have given these same articles twice. These two provisions (the income and the furnishings) are undoubtedly substitutional and give character to other provisions involving the daughter. In the fourth codicil he entrusted the supervision of mortgages and sales to his brother. He did not appoint his daughter

executor in the fourth codicil. He did not confer upon his daughter the right to direct the trustee in the use of the children's income in the fourth codicil. He did not give her the legacies of $10,000 and of $5,000 in the fourth codicil but gave her a life estate in his homeplace, and $1,000. All these things seem to show beyond question that the testator had changed his plans with regard to his daughter and that the fourth codicil was an entirely new scheme, covering the whole ground, and revocatory and substitutional for the provisions with respect to the daughter contained in the original will.

Counsel for the daughter refer to language of the fourth codicil, heretofore quoted, in which testator emphasizes that the *corpus* and income, home and furnishings which the daughter is to enjoy under this instrument, "is in every way protected by the Spend Thrift trust as set out in my will of October, 1936." It is insisted that this is a reinstatement of that trust with all its original benefits in the daughter's favor. We cannot acquiesce in this. The spendthrift trust in the original will was provided for the daughter and the grandchildren. It continued, as modified, by subsequent codicils, as to its powers and restrictions but we are unable to see that the trust benefit, insofar as the daughter was concerned, consisted of anything other than the income, home and furnishings which the daughter was "to enjoy under this instrument." This instrument evidently meaning the fourth codicil since it identified the particular things given to the daughter by the fourth codicil.

We see no basis for the argument that the daughter has any power to supervise sales, mortgages or leases of the trust property. The fourth codicil expressly con-

fers that power upon the testator's brother and goes on to provide that the power shall be exercised after the death of the brother by the daughter and by the grandchildren, if of age. Clearly this excludes the daughter during the brother's life.

By the fourth clause of the will it was provided that the excess income of the trust estate should be used and applied under the direction of testator's daughter and according to her discretion for the support, maintenance and education of her children. By the first codicil it was provided that the trustee should use and apply so much of the net income of his estate as might be necessary for the support, maintenance and education of the grandchildren. A question is presented as to whether the daughter now has the right to direct the application of their income for the support, maintenance and education of the children or whether that is a matter for the trustee's direction. The chancellor declined to pass on this question, saying it was not before him, and error is assigned upon this action.

It seems to us that the language of the first codicil, which we have held remains part of the will, entrusts this authority to the trustee. Naturally the trustee will defer largely to the mother's wishes and no doubt some amicable arrangement can be made as to this matter. If not, upon proper showing, the chancellor will direct a suitable allowance to be made to the children for such purposes, to be altered at any time, as circumstances may require.

It should have been stated that the will and the first three codicils were prepared by the testator's attorney. The last codicil was prepared by his brother, a layman.

No question is made as to the regularity and validity of the appointment of the Third National Bank as executor and trustee. The chancellor's decree in that respect and in all other respects is affirmed. The costs will be paid by the executor.