[Civ. No. 14044. First Dist., Div. Two. Nov. 30, 1949.]

Estate of GEORGE DUBOIS, Deceased. GEORGE DU-
BOIS, JR., et al., Appellants, v. AMERICAN TRUST
COMPANY, as Executor, etc., et al., Respondents.

J. R. Klawans and Harrison W. Call for Appellants.

Phil F. Garvey, Julia M. Easley, Severson & McCallum, Jno. U. Calkins, Jr., and John E. Landon for Respondents.

GOODELL, J.—The testator died on May 12, 1947. Three documents were admitted to probate as his last will and testament consisting of a will dated September 26, 1946, a codicil dated November 14, 1946, and a codicil dated April 2, 1947. Appellant George Dubois Jr., a son of testator, filed a contest wherein he alleged "That by the . . . codicil . . . of April 2, 1947 . . . decedent revoked the codicil . . . of November 14, 1946." He alleged further that by the will and the April codicil decedent had left all the residue of his estate to the Sister Elizabeth Kenny Foundation, a charitable institution, and that such bequest and devise "is in contravention of the limitations imposed by Section 41 of the Probate Code" because made without any waiver by decedent's son and daughter. The court found against him and refused to change its order admitting the will and both codicils to probate. The contestant, joined by his sister, appealed.

By the will of September 26, testator in emphatic language cut off his son and daughter with a bequest of but $2.00 to each of them. He left $1.00 to his wife from whom he was separated and with whom he had made an agreement which precluded her sharing in his estate. He left $1,000 and his household furnishings to a friend named May Paschich. He left bequests to other friends.

By the will he devised and bequeathed the entire residue of his estate to the Kenny Foundation.

By the first (or Nov.) codicil he expressly revoked the Kenny bequest and made a new disposition of the residue by leaving one-third thereof to the same Sister Elizabeth Kenny Foundation for Infantile Paralysis, Northern California State Headquarters, "to be used by said foundation in the care and treatment of adults and children suffering from infantile paralysis" and two-thirds thereof to the University of California at Berkeley "for the purpose of establishing, setting up, carrying on and maintaining a scholarship and fund for the study of the cure, care, treatment and control of infantile

paralysis, and the study of the care and treatment of adults and children suffering from infantile paralysis.''

The second codicil which the appellants claim revoked the first codicil reads: "I, George Dubois . . . do hereby make, publish and declare this present codicil, which I order and direct shall be taken as and for part of my last will and testament heretofore executed on the 26th day of September, 1946.

''First: I do hereby ratify and confirm my said will so made as aforesaid, on the 26th day of September 1946, save and except so far as any part thereof shall be revoked or altered by this present codicil, and in particular save so far as the same relates to the bequest in favor of my friend and housekeeper, May Paschich, as particularly set out in paragraph Seventh of my said will.

''Second: I do hereby expressly revoke and cancel that certain bequest and devise contained in said paragraph Seventh of my said will dated the 26th day of September, 1946, and which said bequest and devise is in favor of my friend and housekeeper, May Paschich. . . .''

The testator then assigned the death of May Paschich as his reason for the revocation. The April codicil contains no express revocation of the earlier codicil, nor any revocatory language beyond that cancelling the Paschich bequest.

The only question for decision is whether the court was correct in finding that ". . . the testator, intended the first codicil to stand as part of his will, and that the mere failure . . . to mention the first codicil in the second codicil does not present sufficient evidence to justify a determination that he . . . intended to revoke the first codicil.''

It is settled law that ''A determination expressed in a codicil to make an alteration in the will in one particular negatives by implication any intention to alter it in other respects'' (26 Cal.Jur. 810; see, also, *Estate of Ladd,* 94 Cal. 670, 675 [30 P. 99]). ''A codicil . . . is an addition or supplement to a will, and is no revocation thereof, *except in the precise degree in which it is inconsistent therewith,* unless there be words of revocation'' (*Estate of De Laveaga,* 119 Cal. 651, 656-7 [51 P. 1074], citing *Estate of Ladd, supra;* emphasis added).

Section 25, Probate Code, provides that ''The execution of a codicil referring to a previous will has the effect to republish the will as modified by the codicil.'' When, therefore, the April codicil was executed the will of September 26 had been already republished by the first codicil (which re-

ferred to it) *as of November 14, 1946, the date of the first codicil (Estate of Ladd, supra)* and the two testamentary documents had become one in legal effect (Prob. Code, § 101; *Estate of Ladd, supra*). This integration must be borne in mind in the consideration of appellants' arguments that the second codicil severed the first from the basic will and republished the will shorn of the first codicil.

Appellants contend that this shearing was accomplished by the use of certain words in the introduction and in paragraph "First" of the April codicil. In the introduction the testator directs that the present codicil "shall be taken as and for part of" his will of September 26. This language, appellants argue, shows that the testator "is not going to leave to speculation or conjecture or surmise what his will shall consist of or what documents shall comprise his will." This proves nothing, since a fifth or sixth or sixteenth codicil would be just as much a part of a basic will as would a first or second, and it would be so by operation of law without any direction. Moreover, the November codicil had already become part of the basic will by operation of law, and it, too, had used precisely the same directive words as those quoted above. The direction that the April codicil "shall be taken as and for part of" the will did not say that the earlier codicil should no longer be a part thereof.

The "First" paragraph of the April codicil reads: "I do hereby ratify and confirm my said will *so made as aforesaid,* on the 26th day of September, 1946, save and except so far as any part thereof shall be revoked or altered by this present codicil" (emphasis added). Appellants argue that by the four words just emphasized the testator "limits his will to the document executed on the 26th of September, 1946, and *in the manner* it was made on that day, modified only by the language of Codicil II" and that "he limited his will to the manner or in words it was originally drawn. (Emphasis appellants'.)

The testator, however, did not say "in the manner it was made on that day" nor did the four emphasized words mean it. If preceding those four words the testator had by quotation or otherwise indicated the *manner* in which the document of September 26 was worded there might be some room for appellants' argument, but no such antecedent expression is to be found. In *Finnegan* v. *United States,* 231 F. 561, 565 [145 C.C.A. 447], it is said: " 'As aforesaid' is an adverbial referential expression, meaning 'in the manner aforesaid',

'in like manner' . . . ." In that case there was no antecedent language in the indictment to which the words "And so the grand jurors do further present as aforesaid" could apply or relate, hence the court rejected the words "as aforesaid" as mere surplusage. So, in this case, the only antecedent language is the direction that the present (Apr.) codicil shall be taken as part of the will of September 26. The language which then follows, viz., ratifying "my said will so made as aforesaid" cannot be construed as anything further than a repetition of the statement that such will had been made on September 26, and was ratified. There is no basis for appellants' claim that the four words, in the context in which they are found, mean "exactly as made" or "made in like manner." The sentence should be construed as if it simply read "I do hereby ratify and confirm my said will save and except" etc. The words "so made as aforesaid" etc. were sheer redundance and should be rejected as so much surplusage. (26 Cal.Jur. 887; *Estate of Heard*, 25 C.2d 322, 328 [153 P.2d 553].)

To adopt appellants' contention would give to the April codicil a strained and unnatural meaning rather than its ordinary and grammatical one (Prob. Code, § 106). That codicil used the earlier one as a model. In both codicils the introductory paragraph and the "First" provision read *exactly* the same, down to the point where the first codicil branches off to deal with the Kenny revocation, and the second branches off to deal with the Paschich revocation. Both codicils make themselves part of the will by express reference to its date; both ratify it by repeating the same redundant language "so made as aforesaid," and both contain the phrase "save and except so far as any part thereof shall be revoked or altered by this present codicil."

■ To adopt appellants' contention would result in intestacy as to the bulk of the estate (see Prob. Code, § 102; 26 Cal.Jur. 899; *Estate of Heard*, 25 Cal.2d 322, 326, *supra*; *Estate of Johnson*, 107 Cal.App. 236, 239 [290 P. 314]; *Estate of Ottoveggio*, 64 Cal.App.2d 388 [148 P.2d 878]). Moreover it would destroy the general testamentary plan (see *Estate of Franck*, 190 Cal. 28, 31 [210 P. 417]), which, obviously, was to bring the charitable bequests within the tolerance of section 41, and the exemption of section 42, Probate Code.

■ The Kenny and University bequests were phrased in clear and distinct language and their revocation could be effected only by express language (Prob. Code, §§ 72, 74) equally as clear and distinct as that originally used (Prob.

Code, § 104; *Estate of Dunn,* 32 Cal.App.2d 240, 242 [89 P.2d 667] ; see, also, *Estate of Ladd, supra, Estate of Dominici,* 151 Cal. 181, 189-90 [90 P. 448] ; 26 Cal.Jur. 810) or by wholly inconsistent dispositions. There was no inconsistency in the April codicil since the Paschich revocation *added to the Kenny and University bequests by making the residue larger.*

The only California case cited in support of appellants' contention is *Estate of Cazaurang,* 42 Cal.App.2d 796 [110 P.2d 138], where a holographic codicil was written on the same piece of paper as an earlier will. The court followed *Estate of Plumel,* 151 Cal. 77 [90 P. 192, 121 Am.St.Rep. 100], and held that because of that physical connection the codicil revived and republished the first will which had been revoked by an intervening will. The Cazaurang case did not embrace the present question whether a later codicil revoked an earlier one by failing to mention it. Moreover the provisions of the Cazaurang codicil were totally inconsistent with those of the intervening will. That case dealt with two wills and one codicil, while this deals with one will and two codicils, and *"There is a distinction between an intermediate will and an intermediate codicil . . . and where the testator by a codicil confirms his will, the will, together with all codicils, is ordinarily taken to have been confirmed."* (68 C.J. 868; emphasis added.) The Cazaurang case (followed recently by us in *Estate of Carr,* 93 Cal.App.2d 750 [209 P.2d 956]), has no bearing on this case.

 The decisions in the United States and England support the action of the probate court in this case.

In 68 Corpus Juris, "Wills," page 868, it is said ". . . A mere reference to the date of the original will is no indication of the intention to deprive all instruments other than the original will itself of any force; in fact such a reference to a will does not affect a revocation of the antecedent codicils, but is a ratification of the will as modified by the codicils."

(See, also, 57 Am.Jur. "Wills," § 489, pp. 340-1 and 1 Page on Wills (Life ed.) § 467, p. 850.)

In an annotation in 51 American Law Reports, page 652 at page 728, it is said: "One codicil does not revoke another unless it is clear that the testator intended that it should do so. The legal presumption is against such revocation, unless they are so inconsistent that they cannot stand together. Therefore, an intermediate codicil is not impliedly revoked by a later codicil, in terms confirming the will, but making no mention of the earlier codicil, but if a later codicil makes a disposition

of certain property inconsistent with a disposition made in a former codicil, the former is revoked." There is a supplemental annotation at 123 American Law Reports, pages 1395, 1408.

One of the late cases on the subject is *Third National Bank v. Scribner* (1939), 175 Tenn. 14 [130 S.W.2d 126, 123 A.L.R. 1385]. That case holds (syl. 2, 123 A.L.R. 1385) that "A fourth codicil, declared by its terms to be a codicil to will referred to by date, did not work a revocation of intermediate codicils not mentioned therein and republish only the original will; on the contrary, the reference to the original will by its date was a republication of that instrument together with all intervening codicils, although no specific mention was made of them." It contains an extended review of the subject including the leading English cases. It is interesting to note how the reasoning of the court parallels that of one of our California cases. In discussing the contention that a third codicil reinstated the provisions of the basic will the Tennessee court said: "It may be assumed, the three codicils being prepared by the same careful hand, had such a thing been intended, a restoration of the daughter to the testator's bounty *would have been declared in language something like as clear and precise as the language used in her disinheritance."* (Emphasis added.) In *Estate of Dunn,* 32 Cal.App.2d 240, 242, *supra,* the court said: "The terms of a will may not be disturbed by language in a codicil unless such language evinces a limitation or change *in words as definite in expression as the terms of the will."* (Emphasis added.) Compare, also, the quoted language of the Scribner case with that of section 104, Probate Code.

Among the English cases discussed and followed in the Scribner case is *Green* v. *Tribe* (1878), 9 Ch.D. 231, where the court said: "Assuming a testator to have made a will, to have made a first codicil modifying that will, to have made a second codicil describing his will by the date which the original instrument bore, and confirming that will, but observing an absolute silence with regard to the first codicil, what is the effect of the second codicil? Does it revive the first will as it originally stood, or does it confirm the original will as modified by the first codicil? . . . The question, therefore, which I have to consider is whether the reference to the date of the original will is an indication of the intention to deprive all instruments other than the original will itself of any force—in fact, whether such a reference to a will effects a

revocation of the antecedent codicils. To this inquiry a series of cases appears to afford a clear negative answer.''

The Scribner case also cites and follows *In the Goods of De La Saussaye* (1873), volume III Law Reports (Probate and Divorce), 42, cited and followed in *Green* v. *Tribe, supra.*

Other American cases holding the same way are *Warnken* v. *Warnken* (Tex.Civ.App., 1937), 104 S.W.2d 935, 938; *Syfer* v. *Dolby* (1943), 182 Md. 139 [32 A.2d 529] and *Lee's Estate* (1901), 16 Pa.Super. 627. In *Syfer* v. *Dolby* the court quotes from *Lee's Estate* as follows: ''Where a testator in a codicil revokes a provision of his will, and in a second codicil referring to the will by date says: 'I do confirm my said will in all respects, except so far as the same is changed by this codicil', he does not by the second codicil reestablish the provision in the will which had been revoked by the first codicil.'' The Syfer case cites both the Scribner and Warnken cases as well.

Appellants claim that what the court said in *Green* v. *Tribe* was simply a dictum, and that *Burton* v. *Newbery* (1875), 1 Ch.Div. 234, states the true rule of the English cases. It would seem that what the English courts say respecting their own cases is the best evidence of what those cases hold. *Burton* v. *Newbery* was a Chancery Division case, as was *Green* v. *Tribe,* and the latter case had this to say respecting the former: ''It appears to me that the Master of the Rolls . . . did not intend (as has been argued before me) to lay down that the confirmation of a will referred to by its date would revoke a preexisting and valid codicil.''

The court was correct in ruling against the contestants and in holding that the will and both codicils constitute the last will and testament.

The order is affirmed.

Nourse, P. J., and Dooling, J., concurred.