THIRD NATIONAL BANK, Appellee,

*v.*

ELIZABETH WILSON CATES SCRIBNER et al., Appellants.

370 S. W. 2d 482.

(*Nashville,* December Term, 1962.)

Opinion filed September 11, 1963.

WATKINS, McGUGIN & STEWART, Nashville for Elizabeth Cates Scribner.

W. OVID COLLINS, JR., CORNELIUS & COLLINS, Nashville, for Third National Bank.

ROBERT W. STURDIVANT, TRABUE, MINICK, STURDIVANT & HARBISON, Nashville, for James Wilson Cates.

ROBERT W. STURDIVANT, Nashville, guardian ad litem for Mary Elizabeth Talley.

MR. SPECIAL JUSTICE ROBERT S. CLEMENT delivered the opinion of the Court.

The Appellant herein, Elizabeth Wilson Cates Scribner, is the daughter of the late R. Morris Wilson and is a beneficiary under his will. James Wilson Cates and Mary Elizabeth Cates Talley are the children of the Appellant and are also beneficiaries under the will. The Third National Bank is the Trustee under the will of R. Morris Wilson. Litigation dealing with the estate of the decedent goes back to October 26, 1938, when a bill was filed to construe certain portions of the decedent's will and to obtain instructions as to the proper administration of the trust. There were subsequent decrees of the Court which the Appellant is now seeking to invalidate which will be discussed in detail in this opinion.

Appellant was a beneficiary under a will executed by her father in 1936. Later he disinherited her, but under a fourth codicil to his will, he made her a beneficiary. The effect of the fourth codicil, which was drawn by the

testator's layman brother, was considered in *Third National Bank v. Scribner,* 175 Tenn. 14, 130 S.W.2d 126, 123 A.L.R. 1385, where it was held that the fourth codicil did not revive Appellant's interest under the 1936 will, but that any interest she had in her father's estate came solely from the codicil. The language pertinent to this cause is:

"My daughter shall have the use and occupancy of my Home on the Franklin Road with what furnishings therein belonging to me for her live (sic), free of rental, and I direct that the Trustee or Trustees pay, from the funds of my estate, the taxes and insurance thereon.

"I further wish to emphasize that the corpus and income, my home and furnishings which my daughter Elizabeth is to enjoy under this instrument is in every way protected by the spend thrift trust as set out in my will of October 1936."

In a 1942 proceeding which was primarily concerned with the size of the allowance for the rearing of Appellant's children, the decree provided that the trustee was "permitted" to make such repairs on the home place as would be necessary for its preservation. In a 1946 proceeding, again primarily concerned with the allowance for the children, the court approved and ratified the expenditures of certain funds on repairs of the home place, and provided that in the future the trustee would be empowered to make such expenditures without prior court approval.

In 1950 the opportunity arose for a portion of the large tract on which the ancestral house was located to be rented. At this time appellant and her two children, one of whom was no longer a minor and the other of whom

had her disabilities of minority removed, entered into an agreement which was approved in a decree entered December 22, 1950. As a result of the agreement and the decree, a lease of five years, renewable for two more five-year periods, was executed, and a portion of the trust corpus was used in the financing of construction on the rental property. The agreement further provided for the distribution of the rental income, a portion to go to appellant and a portion to the trust estate.

Finally, in 1954, appellant's children again raised the issue of whether the trustee should pay for repairs on the home place. In exchange of pleadings, the issue of the right to rental income from the tract of land on which the ancestral home was situated was raised. However, in a "Final Decree" entered on November 15, 1954, after a hearing before Chancellor Thomas A. Shriver, the matter was terminated. The decree recited that

"the parties hereto having adverse interests in the questions presented by said pleadings, to wit: Elizabeth Wilson Cates Scribner and James Wilson Cates and Mary Elizabeth Cates Talley, are before the Court and are sui juris, and that they have compromised and settled all the matters in controversy and evidenced same by a written agreement * * *."

The decree further stated that so much of the agreement as undertakes to interpret the provisions of the will constitutes proper interpretations; that such of the agreement as is a compromise settlement between the beneficiaries is fair and equitable; and that the agreement in its entirety is fair, reasonable and proper, and not inconsistent with the provisions and directions of the will. It then adjudged that the agreement was ratified and

approved and made the order of the court, and decreed that previous orders of the court as to payments to be made by the trustee for maintenance and repair of the home place should be superseded and modified in accord with the agreement.

The agreement provided that (a) the children would guarantee their mother $400.00 per month for eight months, the trustee would pay appellant $1,200.00 cash, appellant could lease all commercially-zoned property adjoining to the home place for up to twenty-five years (with certain provisions as to lease terms), and appellant would get 80% of the rents from such rental property, and that (b) the sole duty of the trustee as to maintenance and repair of the home place should be to pay taxes and insurance, the $1,200.00 should be received in full discharge of any expenditures made or to be made for repair and maintenance of the home place, and 20% of the rental income should go equally to the two children.

The instant proceeding arose out of a controversy over who should bear the expense of pressing an insurance claim. The trustee petitioned for instructions on this matter, and also asked for clarification of prior instructions regarding the trustee's duty to pay for repairs and maintenance of the home place. In a cross-petition, appellant sought a decree that the trustee was under a duty to pay for repairs and maintenance, and further to set aside the 1950 and 1954 agreements and decrees on the ground that they were void, being in violation of the terms of the spendthrift trust. The trustee and appellant's two children demurred to the cross-petition. The Chancellor sustained the trustee's demurrer on the grounds that (1) the decree of 1954 was a consent decree and could not be vacated or modified except for fraud or

mutual mistake, and (2) since appellant could only have had the use of the property in question for her life, and could not have negotiated lease contracts for a period longer than her life, then the agreement to apportion rental income from said property was not an assignment of appellant's interest under the spendthrift trust.

The Chancellor also sustained the demurrers of the children, which were identical, on the grounds that the 1954 decree was a consent decree and could not be vacated or modified except for fraud or mutual mistake; that appellant was estopped to deny the validity of the 1950 and 1954 decrees having accepted the benefits or leases thereunder; the construction of the will approved by the Court in the 1954 proceeding was res judicata; appellant had been guilty of laches and that no proper grounds to vacate the 1950 and 1954 decrees were stated. In his memorandum the Chancellor states that he found the 1950 and 1954 decrees to be consent decrees and further that the parties were capable of binding themselves by consent, and did consent, and that the decrees showed on their face that they were consent decrees. From the sustaining of these demurrers, the appellant has appealed to this Court, assigning the following as error:

1. The Chancellor erred in sustaining the three demurrers and in dismissing appellant's cross-petition.

2. The Chancellor erred in sustaining each and every of grounds Nos. 1, 3, 4, 5 and 6 of the Demurrers filed by James Wilson Cates and Mary Elizabeth Cates Talley and each and every of grounds Nos. 1 and 2 of the demurrer filed by the Trustee and Conservator and in not overruling the demurrers.

3. The Chancellor erred in holding that the Trustee is under no duty to expend trust funds in the maintenance and repair of the homeplace mansion and in not holding that the Trustee is under a duty to do so.

4. The Chancellor erred in holding that the agreements and decrees of 1950 and 1954 are operative and effective assignments by her of part of the rental income of the homeplace property and in not holding that she is entitled under the will to the entire rental income from this property and that this right has not been lost or diminished by those agreements and decrees.

5. The Chancellor erred in enforcing and in not modifying or setting aside the agreements and decrees of 1950 and 1954 insofar as they purported to relieve the Trustee of the duty to maintain and repair the homeplace mansion and insofar as they purported to deprive appellant of any part of the rental income from homeplace property improvements.

6. The Chancellor erred in holding that the attempted division of rentals did not constitute an assignment or relinquishment of spendthrift trust income in violation of the last will and testament of R. Morris Wilson, deceased.

7. The Chancellor erred in holding that the decrees of 1950 and 1954 are consent decrees within appellant's power to make and beyond her power to question and in not holding that she was powerless to consent to their provisions in derogation of her clear and unambiguous rights under the will.

8. The Chanceller erred in holding that appellant is estopped to seek to vacate, modify or revise the decrees

of 1950 and 1954 and that she waived her right to object to their validity and legality.

9. The Chancellor erred in holding that the decree of 1954 is shown by the cross-petition to be a construction of, and res adjudicata, upon the proper construction of the will.

10. The Chancellor erred in holding that the cross-petition shows on its face that appellant has been guilty of laches.

11. The Chancellor erred in holding that the cross-petition fails to state proper legal grounds to vacate the decrees of 1950 and 1954.

■ A judgment by consent is in substance a contract of record made by the parties and approved by the court, 49 C.J.S. Judgments, sec. 173; 30A Am.Jur. Judgments 144; Gibson's Suits in Chancery 619. In both the 1950 and the 1954 proceeding, a contract entered into by the parties was submitted for the court's approval, and upon receiving that approval, was entered on the records of the court as a part of the decree.

■ It is insisted that appellant was without power to assign any of the rental income from the property in question, because of the bequest to her of the "use and occupancy" of this property subject to spendthrift trust provisions. Thus it is argued, since appellant could not validly contract to assign part of this income, neither could a valid consent decree be rendered based on such a contract.

The answer to this contention is that the Chancellor in the 1954 proceeding had before him the issue of appellant's capacity to enter into such a contract, and found

that she was capable. It is now too late to question that finding.

■ Moreover, it is well settled that even though a party lacks capacity to contract, a consent decree based on his agreement will bind him. *Milly v. Harrison,* 47 Tenn. 191; *Musgrove v. Lusk,* 2 Tenn.Ch. 576; Gibson's Suits in Chancery, 619.

■ A consent decree is so binding as to be absolutely conclusive upon the consenting parties. Gibson's Suits in Chancery, 619, citing numerous cases, *Williams v. Neil,* 51 Tenn. 279; *Clinchfield Stone Co. v. Stone,* 36 Tenn.App. 252, 254 S.W.2d 8. The general rule as to the effect of a consent decree is well stated:

"While a consent judgment and a judgment on the merits are distinguishable, for enforcement purposes they stand on a parity * * * (A) consent judgment acquires the incidents of, and will be given the same force and effect as, judgments rendered after litigation." (30A Am.Jur. Judgments 148)

"The conclusiveness of res judicata effect of a consent judgment applies even though the court rendering the consent decree has not ascertained the truth of the facts averred, and has not exercised its mind and passed on the matters in controversy, and even though the judgment is erroneous. The fact that without the consent of the parties the court might not have rendered the judgment does not affect its effect as res judicata." (30A Am.Jur., Judgments, 150.)

See also the lengthy annotation at 2 A.L.R.2d 514, collecting most of the cases in point, and concluding, *inter alia,* that it is uniformly held that a judgment or

decree based on a compromise is "on the merits" and is a bar to a subsequent action on the same issues.

The policy of the law is to favor compromise. Thus, in the absence of fraud or mistake (that is, when there has been a true consent to the compromise), the courts will not overturn a consent decree. Furthermore, the policy of the law is to favor a final termination of litigation. Thus, when a decree has been entered, and the time for seeking review has run out (as it has in the case of the 1950 and 1954 decrees), the parties will not be allowed to re-open the matters determined in that decree.

In the case at bar, the alleged imperfection in the underlying agreement is that the terms of a spend-thrift trust are by it violated. The purposes of a spend-thrift trust, are, first, to protect the beneficiary from his own improvidence and folly, and second, to protect the corpus of the estate. The second purpose is of no concern here, since whatever the appellant gave up went to her children, the residuary beneficiaries.

In this case, the agreement was submitted to the Chancellor for his approval. He found it to be in the best interest of all parties that the proposed agreement be executed. That is, he determined that it would be neither improvidence nor folly for the appellant to enter into the agreement, but indeed found that the 1954 agreement was perfectly consistent with the testator's intent as expressed in his will. It thus appears that the policy behind the enforcement of spendthrift trusts was met, and that the policy of res judicata should prevail.

The 1954 decree made a final determination of the responsibility to repair, and of the disposition of rental

income (except for that from the Kroger store, which was settled in the 1950 decree). Since appellant has not shown any fraud or mistake in the procuring of these decrees, they operate as a final determination of the matters sought to be raised in appellant's cross-petition.

In any event, the case of *Burton v. Burton,* 208 Tenn. 11, 343 S.W.2d 867, is controlling here. There, the beneficiary of a spendthrift trust entered into a consent decree construing the term "remarriage" in the trust instrument. He later attacked the decree, maintaining that he had no capacity to enter into the consent decree changing the terms of the trust. He lost, the court holding that the creator of the trust had used ambiguous language which required construction, and that a consent decree was a valid way to settle on a construction.

The appellant attempts to distinguish the Burton case by alleging that here there is no ambiguity, but the language used by the testator does not support the appellant's contention of clarity. The ambiguity is obvious and the necessity for construction is equally obvious.

The Burton case holds that when the beneficiary of a spendthrift trust is engaged in litigation concerning the terms of the trust, the outcome of which litigation may reasonably be called doubtful, he may enter into a compromise agreement, and if the court approves of the compromise as a reasonable construction of the trust, and in the best interests of all concerned, and a consent decree is entered thereon, the consenting beneficiary may not in subsequent litigation question the matters settled in the consent decree, except on the basis that his consent was procured by fraud or mistake. Of course, the Court will not allow the device of a consent decree to be used

to avoid the restrictions of a spendthrift trust, by the means of collusive litigation; but this is manifestly not such an instance.

For the reasons stated, all assignments of error are overruled and the decree of the Chancellor is affirmed.

As the Trustee initiated this action, we adjudge the costs against the Third National Bank, as Trustee under the will of R. Morris Wilson.

WHITE, JUSTICE, not participating.