IN RE: ESTATE OF WILLIAM F.        )
BURTON, JR., Deceased,             )
                                   )     **Davidson Probate**
BOBBI BURTON MILLER, Executrix,    )     **No.  79822**
                                   )
        **Appellant,**             )
                                   )     **Appeal No.**
VS.                                )     **01A01-9708-PB-00434**
                                   )
PAUL T. HOUSCH, ADMINISTRATOR      )
C.T.A., D.B.N.,                    )
                                   )
        **Appellee/Cross Appellant.** )

**FILED**

**June 12, 1998**

Cecil W. Crowson
Appellate Court Clerk

**IN THE COURT OF APPEALS OF TENNESSEE**
**AT NASHVILLE**

**APPEAL FROM THE PROBATE COURT OF DAVIDSON COUNTY**
**AT NASHVILLE, TENNESSEE**

**HONORABLE WALTER KURTZ, JUDGE (Designated)**

Charles A. Trost, #4079
Joseph A. Woodruff, #12869
Michael G. Stewart, #16920
WALLER, LANSDEN, DORTCH & DAVIS
511 Union Street, Suite 2100
Nashville, TN 37219
ATTORNEYS FOR APPELLANT


Frankie E. Wade, #6163
HILL AND BOREN
1269 North Highland Avenue
P.O. Box 3539
Jackson, TN 38303-3539
ATTORNEY FOR APPELLEE/CROSS APPELLANT

**AFFIRMED IN PART,**
**REMANDED IN PART.**

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
WILLIAM C. KOCH, JR., JUDGE
WALTER W. BUSSART, JUDGE

| | |
|---|---|
| IN RE: ESTATE OF WILLIAM F. BURTON, JR., Deceased, ) ) | |
| ) | **Davidson Probate** |
| BOBBI BURTON MILLER, Executrix, ) | **No. 79822** |
| ) | |
| Appellant, ) | |
| ) | **Appeal No.** |
| VS. ) | **01A01-9708-PB-00434** |
| ) | |
| PAUL T. HOUSCH, ADMINISTRATOR ) | |
| C.T.A., D.B.N., ) | |
| ) | |
| Appellee/Cross Appellant. ) | |

# O P I N I O N

This appeal involves an interlocutory order of the Probate Court surcharging the executrix, Bobbi Burton Miller, for misfeasance to the extent of $150,179.23 plus prejudgment interest. The executrix resigned, and an administrator, C.T.A., D.B.N. (with will annexed, for further administration) represented the estate in Probate Court and this Court.

The executrix-appellant has filed the following issues:

> I.  Whether the trial court erred when it refused to enforce a consent decree approving a family settlement agreement despite the fact that appellees had not alleged much less put forward proof of, fraud in the procurement of that agreement.

> II.  Whether the appellees, having reaped hundreds of thousands of dollars in benefits pursuant to a family settlement agreement, are estopped from challenging that agreement's validity?

> III.  Whether it was error, absent a finding of fraud or gross abuse of discretion for the trial court to substitute its opinion of what distributions were "necessary" for that of a trustee expressly granted full discretion in such matters by decedent's will?

> IV.  Whether the trial court, having declared in a final order that $4,500 per month distributions to the beneficiaries by the successor fiduciary were appropriate, was precluded by collateral estoppel from subsequently taking precisely the opposite position with respect to appellant?

The administrator-appellee has stated the issues as follows:

A. The release and hold harmless provisions of the settlement agreement are not enforceable by Bobbi Burton Miller, executrix in this Probate Court accounting procedure.

1. The Probate Court's Decree does not absolve Ms. Miller from accounting for her administration of the Estate or the liability for any surcharge thereon.

2. The Trial Court's reasons for not enforcing the release and hold harmless provisions of the settlement agreement are valid.

a. The settlement agreement specifically states that Mrs. Miller "shall settle her accounts" and thus, this reference to her settlement of her accounts is inconsistent with an interpretation that the release is a waiver of the requirement for her to settle her accounts.

b. The order which approves the settlement specifically approves the monetary settlement but does not mention the release.

c. The release is signed by Mrs. Miller in her capacity as executrix and trustee releasing herself. Such a release is ineffective and will not be given force and effect by this Court.

d. The release is also not signed by any representative of the contingent beneficiaries.

B. The doctrine of estoppel is not applicable in the account of Bobbi Burton Miller.

C. The Trial Court's finding that Ms. Miller abused her discretion is correct.

D. The doctrine of collateral estoppel is not applicable and does not preclude the Trial Court's findings in this accounting.

IV (B). APPELLEE/CROSS-APPELLANT'S ADDITIONAL ISSUES

A. The Trial Court should have surcharged Bobbi Burton Miller for loss to the value of the

property of the estate caused by the refinancing and sale of the Rivergate Inn.

B.   The Trial Court should not have approved the improper and excessive attorney's fees.

C.   The Trial Court committed reversible error when it approved additional disbursements by Bobbi Burton Miller as charges against the estate and refused to surcharge her for them.

1.   Distributions made to Bobbi Burton Miller under the terms of the will are not proper charges against the estate.

2.   The tax penalties and interest paid by Bobbi Burton Miller are not proper charges against the estate.

William F. Burton, Jr. was a Nashville lawyer who had retired from active practice when he prepared and executed his will on August 24, 1986. He willed his entire estate to his wife, Bobbi Burton, (who remarried after his death and became Bobbi Burton Miller) in trust with detailed instructions for administering the trust. The purpose of the trust was stated as follows:

THE Trustee shall use the assets of the Trust in order of preferences as follows:

(a)   Provide for the normal necessities and support of my wife and each of my three children, includes a college education if advisable, until that child reaches the age of twenty-three years in so far as my wife is concerned, she shall receive one-fourth (1/4) of the net income of my estate from the date of my death.

(b)   Upon the youngest of my three children reaching the age of twenty-three years the Trustee shall pay one-third of the net income available after the provision for my wife to each of my three children for and during each of their natural lives and to their issue for a period of twenty-one years thereafter, at which time one-third of the trust shall terminate and be distributed to the heirs-at-law of said deceased child living at that time.

At any time that any one of my children shall be deceased without leaving issue surviving, or the blood line of one should become extinct, then, in that event, that

-4-

> share shall be paid to the other of my children
> or their issue per stirpes and to my wife in
> equal share.  (Emphasis supplied.)

It is clear from the emphasized portion of the above that the unused portion of the trust property at the death of each child was vested as a remainder in the "issue," that is, child or children of each of testator's children, i.e., the grandchild or grandchildren of the testator.

The following grandchildren have been born: William F. Burton, IV, born October 10, 1987; and two unnamed grandchildren described in the record as "young."

Although not pertinent to the issues on appeal, Mr. and Mrs. Burton had executed a pre-nuptial agreement prior to their marriage.  Mrs. Burton Miller denies the validity of the agreement, but this issue is not involved in this appeal.

For whatever reason, in making his will, Mr. Burton did not see fit to take advantage of the well known "spousal deduction" whereby any testamentary gift to the spouse of the testator is exempt from death taxes up to one-half of the estate.

Because of the size of Mr. Burton's estate, it became evident that it would benefit all beneficiaries of the will if Mrs. Burton Miller would dissent from the will and claim her statutory share of the estate as provided by TCA §§ 31-4-101 et seq.

On August 21, 1989, the Probate Court entered an order approving an agreement executed by the executrix and the adult beneficiaries of the will.  The unborn vested remaindermen were not parties to this agreement and order.  A copy of said order and attached agreement is appended to this opinion as Exhibit A.

Pursuant to the agreement, the executrix resigned and the Probate Court appointed Sovran Bank (now NationsBank), as administrator C.T.A., D.B.N.

On September 12, 1991, the Probate Court accepted the resignation of the Bank and appointed Paul Housch as substitute administrator C.T.A. The Bank or Mr. Housch has managed the affairs of the estate since February 27, 1990.

The principal asset of the estate was a motel which produced a substantial income. The executrix sold the motel on credit and collected installments of the sale price in lieu of rent. Both rent and installments were divided among the beneficiaries of the will by the executrix.

After the Bank assumed management of the estate, the purchasers defaulted and the Bank foreclosed, resulting in a sharp reduction in cash flow to the beneficiaries of the will.

On April 26, 1994, the administratrix filed her "Amended and Restated Final Settlement."

On May 24, 1996, Paul Housch, administrator, filed his exceptions to the settlement of the executrix.

On April 9, 1997, the Probate Court entered its final judgment upon the exceptions concluding as follows:

> 2. Bobbi Burton Miller shall pay to the Estate of William F. Burton, Jr., the sum of two hundred and thirteen thousand, four hundred and ninety-eight dollars and seventy-three cents ($213,498.73) which sum represents the surcharge of one hundred and fifty thousand, one hundred and seventy-nine dollars and twenty-three cents ($150,179.23) and interest of sixty-three thousand, three hundred nineteen dollars and fifty cents ($63,319.50) computed at six percent (6%) from March 1, 1990 through March 10, 1997.

3. Pursuant to T.C.A. § 47-14-121, 122, the entire sum of two hundred and thirteen thousand, four hundred and ninety-eight dollars and seventy-three cents ($213,498.73 shall bear interest at the post judgment interest rate of ten percent (10%) from March 10, 1997, the date of entry of the court's verdict as evidenced by the Memorandum and Order incorporated herein; said interest to be calculated at the rate of $58.49 per day.

4. No distributions shall be made to any beneficiary without the express order of this court.

5. The Court has now disposed of all issues related to this accounting and this judgment is to be considered final pursuant to Rule 54.02, Tennessee Rules of Civil Procedure.

6. The court costs are taxed equally to Bobbie Burton Miller and the Estate of William F. Burton, Jr.

7. For all of the above, execution may issue.

At no time during proceedings in the Trial Court or this Court have the minor residual beneficiaries of the testamentary trust been joined or represented in this proceeding except as the administrator CTA has called attention to their interest.

On appeal, the executrix asserts:

**1. The Probate Court's Decree Is A Final Order Which Absolves Mrs. Miller Of All Liability For Actions She Took As Executrix.**

In refusing to enforce the Consent Decree carefully negotiated by Ms. Miller and all of the Adult Beneficiaries, the Trial Court impermissibly reopened a final judgment of the Probate Court and in so doing denied Ms. Miller the benefit of a bargain on which she had reasonably staked her financial future. The Beneficiaries, represented by counsel from a major law firm of their choosing, made the decision to enter into the Family Settlement Agreement with Ms. Miller whereby she received just $515,000.00 of Estate assets in lieu of a disputed statutory one-third interest in the Estate worth in excess of One Million Three Hundred Thousand Dollars ($1,300,000.00).

- - - -

It was in exchange for all of these benefits that the Beneficiaries, having opted not to replace Ms. Miller with a

professional Administrator when she sought a statutory share, made the following unambiguous pledge:

> The Beneficiaries, for themselves, their heirs and assigns of the Deceased's Estate hereby agree to hold plaintiff harmless from <u>any and all liability</u> arising out of or in connection with her services as Executrix and/or Trustee under the terms and conditions of Deceased's Will. The Beneficiaries and the Estate further agree to release plaintiff from any and all claims or causes of action which they may have or which may hereafter arise in connection with her services as Executrix and/or as Trustee or for any services rendered in such capacities.

The executrix cites *Third National Bank v. Scribner*, 212 Tenn. 400, 370 S.W.2d 482 (1963), wherein a beneficiary of a spendthrift trust joined in a contract with the trustee to provide for the manner of administering the trust property. The contract was approved by a consent decree. The trustee filed a suit for interpretation and instructions, especially as to the sale of land occupied by one of the beneficiaries. Some of the beneficiaries demurred to the suit of the trustee, and the Trial Court dismissed the suit of the trustee. On appeal, the Supreme affirmed, holding that the trustee was estopped by the agreement and consent decree.

The present case is distinguishable by the fact that this is not a suit for instructions, but exceptions by a successor/administrator/trustee to the final report of the executrix/trustee who resigned. The successor/trustee should not be bound by an agreement of his predecessor to dissipate the fund held in trust.

In the cited case, the trustee had made no unauthorized distributions; in the present case, the executrix/trustee has made unauthorized, excessive, distributions to beneficiaries, including herself. Also, in the present case, the consent decree of the Probate Court was not a final judgment and thereby remained subject to revision by the Probate Court at any time before entry of final judgment discharging the executrix. TRCP Rule 54.02.

The executrix cites other authorities regarding the binding effect of consent decrees, which are inapplicable to non-final interlocutory orders. Her claim of estoppel is not well founded because of her remedy of reclaiming from the adult children the excessive payments made to them, and the need to preserve the interests of the minor and unborn grandchildren.

This Court agrees with the Trial Court that equity and the stability of the judicial process require that the executrix properly account to the Court for all property coming into her control as executrix before she can be discharged.

The executrix asserts that the will conferred upon her full discretion as to the amount of payments to be made to herself and the adult children. This Court does not so construe the will, quoted above, which uses the words, "normal necessities and support". The executrix next insists that the Probate Court approved her disbursement in a "final order." The consent decree, signed only by the adult children is not binding upon the minor grandchildren, and the liability of the executrix for her actions remain subject to the judgment of the Probate Court.

The executrix next insists that this Court is "duty bound by established law to reject each and every one of the Trial Court's reasons for not enforcing that decree." This Court accepts as valid the reasons assigned by the Trial Court in its final judgment.

The memorandum and order of the Trial Judge explains the amount of the $213,498.73 judgment against the executrix is as follows:

> (1) The distribution to the beneficiaries by the executrix was not consistent with the will and/or the executrix's fiduciary duty to the estate.
>
> (2) The distributions made by the executrix to herself were inconsistent with her fiduciary duty to the estate.
>
> (3) The executrix breached her fiduciary duty to the estate in her management and sale of the motel which was the estate's major asset, as well as, the loss of certain estate property.

(4)     The executrix breached her fiduciary duty to the estate by either obligating the estate or approving the following fees:

  (a)     attorney fees
  (b)     accounting fees

(5)     The late payment of taxes was inconsistent with the executrix's duty to the estate.

- - - -

The Court does not find that the Johnson default was so predictable that she should be responsible for all the advance payments to the beneficiaries of the trust. She had reason to believe that the assets would be sufficient to make the advance consistent.

- - - -

During the period of time that Ms. Miller was the executrix, (less than three years) she distributed One Hundred Thirty-Six Thousand, Three Hundred Sixty-Eight Dollars, and Sixteen Cents ($136,368.16) to William F. Burton, III, One Hundred Twenty-Seven Thousand, Nine Hundred Forty-Five Dollars, and Thirty Seven Cents ($127,945.37) to Leigh Burton, and One Hundred Thirty-Four Thousand, Two Hundred Eighty-Six Dollars, and Thirty-Seven Cents ($134,286.37) to Elizabeth Burton for a total distribution to the three adult beneficiaries of Four Hundred Eighty-Two Thousand, Nine Hundred Forty-Six Dollars, and Nine Center ($482,946.90) between April, 1987 and February, 1990 (34 months).

- - - -

On the record before the Court, it is difficult to determine with exactitude the amount of money paid beyond what was authorized for "necessities and support" of the beneficiaries. The payments made by the executrix did, however, allow the beneficiaries to live at a level beyond what they lived before their father's death and allowed for extravagant and wasteful spending. The beneficiaries were given money to purchase houses, expensive vehicles, and given money beyond the amount requested up to Five Thousand Dollars ($5,000.00) per month. One beneficiary even bought a pickup truck for her boyfriend. The record is replete with payments for expenditures far beyond what these children needed for normal necessities and support. The Court feels little empathy toward the beneficiary who were immature and greedy, but their immaturity and greed was the very reason that the deceased set up a trust. He certainly had the expectation that his decisions about the distribution of monies to his children would be honored as he requested. These children lived better after his death than before, and received monies beyond what they could have expected from their father. The Court is of the opinion that the executrix should be surcharged One Hundred Twenty Thousand Dollars ($120,000.00) for payments made to the three adult beneficiaries over and above what was appropriate for their "necessities and support."

- - - -

The administrator takes issue with the executrix's purchase of a new automobile for Twenty Thousand, One Hundred Seventy Nine Dollars, and Twenty Three Cents ($20,179.23), as well as, the salary out of the motel operating account totaling Forty Thousand, Five Hundred Dollars ($40,500.00) before the motel was closed. The Court agrees that the settlement agreement does not make exception to the general rule that one dissenting against the will cannot take under the will. The Court, therefore, finds that the executrix was not entitled to the payment for the car of Twenty Thousand, One Hundred Seventy-Nine Dollars, and Twenty Three Cents ($20,179.23). She is to repay this amount. Her salary paid as an employee of the motel out of the motel operating account was reasonable and was authorized as part of her entitlement to continue operating the motel.

- - - -

The fees paid to Mr. Mondelli and to Mr. Paulus and Dearborn and Ewing present the most difficulty related to the fees. (Payments to Mondelli were $14,361.25 and Dearborn and Ewing $48,345.99). The executrix bears the burden of proof as to these fees, and the Court finds that the executrix has failed to convince the Court that all these fees were necessary and proper for the administration of the estate. Both Mr. Mondelli and Mr. Paulus were beset by conflicts of interest (previously noted) and the executrix has failed to convince this Court that all fees were for the benefit of the estate. Mr. Paulus spent time engaged in advising the beneficiaries, and Mr. Mondelli spent time advising Ms. Burton Miller in her individual capacity as she prepared to claim her elective share and dispute the prenuptial agreement. The Court therefore disallows $2,000.00 of the Mondelli fee and $8,000.00 of the Paulus and Dearborn and Ewing fee. In all other respects, these attorney fees are approved.

- - - -

For the reasons stated above, the Court finds that the executrix is to restore to the estate and is surcharged the amount of $150,179.23 for improper distribution to the beneficiaries and improper distribution to herself as well as excessive payment of attorney fees. The Court further orders that interest be assessed on this amount at six percent (6%) per annum from March 1, 1990 to the present. See Pritchard § 862. Ms. Wade will compute this amount and submit an appropriate order.

In support of her fourth issue (above) the executrix states that the beneficiaries should not be allowed to recover from her the excessive benefits they received from her. The present appeal relates to the efforts of the present administrator CTA to require the executrix to account for funds and property coming into her hands as such. This includes her reimbursement of the

estate of funds wrongfully expended by her. Whatever rights she may have in respect to refunds from the adult heirs must be determined and enforced hereafter.

The executrix next insists that the excessive payments made by her to the adult heirs were within the bounds of her discretion. This Court disagrees. The record contains ample evidence of payments to the adult heirs which were clearly violated the express limitations of the will and trust.

Finally, the executrix alleges that the Trial Court charged her with expenditures the exact amount of which were approved when made by her immediate successor, Sovran Bank. On May 15, 1995, the Probate Judge entered a "Memorandum and Order," on page 8 of which is the following:

> The distribution to the beneficiaries by the bank/administrator was <u>not</u> consistent with the will and/or the bank's fiduciary duty to the estate.

On page 15 of the memo/order, the Court stated:

> The Court, with some reservation, will give the bank the benefit of the doubt and find that it would have been reasonable to continue payments sufficient to pay the adult beneficiaries income for education and minimum necessities, but no more. The bank will restore to the estate and is surcharged the amount of One Hundred Eighty Thousand Dollars ($180,000.00).

Even if a court errs in a finding as to the acts of one party during one period of time, it is not thereby estopped from a making a more correct finding in respect to another party during a different period of time. The holding as to the bank is not before this Court in this appeal. After appealing from the judgment, the bank made a compromise settlement which may or may not be a credit against the surcharge of the executrix. The holding of the Probate Court in respect to the executrix, which is before this Court, is approved.

Issues first stated by the administrator/appellee as A, B, C and D, quoted above, are simply a restatement of the appellant's issues in reverse. The above discussion of appellant's issues is deemed a sufficient response to those issues. However, as cross-appellant, the administrator presented four additional issues which must be discussed.

Apparently, relying upon the agreements of the adult heirs to waive any negligence on her part (which defense this Court has rejected), the reply brief of the executrix has not addressed issues A, B, C and D presented by the administrator as cross-appellant relating to the mismanagement of the estate by the executrix.

The first of said issues charges mismanagement by the refinancing and sale of the Rivergate Inn. At the death of deceased, the Inn was leased to an operator at a substantial rental which afforded the executrix/trustee ample funds for the reasonable needs of the beneficiaries of the trust.

The executrix, without need to do so, sold the Inn in what is called a "leveraged deal." The Trial Judge held that this "deal" was mismanagement resulting in loss to the estate, and this Court agrees. The nature of the "deal" was such that only experts in the field of finance would be competent to assess its wisdom. Richard Chambers and Luriven Coomer, qualified experts, testified that the deal was improvident. The reasons given for these assessments were:

1.     There were existing mortgages on the Inn at a fixed rate of 9-5/8% interest and a rate of payment which could be met within the rental income. As a part of the deal, the mortgages were refinanced by borrowing a larger amount from Sovran Bank at a "floating" interest rate higher than that of the previous mortgages. The new, larger, loan included rights of recourse against the estate and the executrix. The term of the loan was five years, during which time the payments were mostly consumed by interest. The expenses of the refinancing

amounted to $13,870.45. Had the sale not taken place, the payments being made on the original mortgages would have reduced them by the amount of $600,000.00.

The executrix sold the Inn to Warren Johnson with a minimum down payment. Out of a $2.8 million purchase price, the estate received only $58,644.58. The balance of the purchase price was secured only by a second mortgage which was subject to, and secondary in preference to the first mortgage to Sovran. The interest paid by the purchaser on the second mortgage created an income tax liability (state and federal) upon the estate.

On September 1, 1989, the purchaser defaulted and the Inn was sold at a foreclosure sale for $900,000.00 to Sovran Bank which subsequently sold it at a private sale for $1,125,000.00. The estate received $45,109.33 as a result of the foreclosure.

The administrator C.T.A. claims that the estate lost $1,002,500.00 as a result of the improvident sale of the Inn by the executrix.

The administrator C.T.A. sued his immediate predecessor, the Sovran Bank, for mismanagement and self-dealing and received a settlement of the liability of the bank. To what extent, if any, the amount so received should mitigate the surcharge against the executrix does not appear in this record.

The administrator C.T.A. also questions the amount and propriety of fees paid to various attorneys by the executrix. Fees paid by a fiduciary should have the advance approval of the supervising court.

The administrator C.T.A. also claims a surcharge for penalties paid for late payments of taxes, and for payments to the executrix in excess of her reasonable needs.

-14-

It does not appear that the issues presented by the administrator C.T.A. were adequately litigated by the parties and adjudged by the Trial Court. Pursuant to T.C.A. § 3-128, the cause must be remanded to the Trial Court for further litigation and adjudication of these issues.

The rulings of the Trial Court challenged in the issues presented by the appellant and appellee are affirmed. As to the rulings challenged by the issues presented by the counter-appellant/administrator C.T.A., the cause is remanded to the Trial Court for further litigation and adjudication. Costs of this appeal are taxed against the executrix personally, not to be credited to her in her final accounting.

The order of the Probate Court from which this appeal is prosecuted is affirmed. Costs of this appeal are assessed against the executrix. The cause is remanded to the Probate Court for further appropriate proceedings.

**AFFIRMED IN PART,**
**REMANDED IN PART.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
WALTER W. BUSSART, JUDGE