IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 6, 2003 Session

## TRINITY INDUSTRIES, INC. v. McKINNON BRIDGE COMPANY, INC.

**A Direct Appeal from the Chancery Court for Davidson County**
**No. 99-3454-I     The Honorable Irvin H. Kilcrease, Jr., Chancellor**

_____

**No. M2002-02713-COA-R3-CV - Filed September 22, 2003**

_____

In this case, appellant-contractor for construction of a bridge entered into a contract with appellee-subcontractor for the fabrication and delivery of structural steel. By virtue of an indemnity clause in the contract, the trial court held the contractor liable to the subcontractor for the amounts expended by the subcontractor in settlement of a lawsuit filed against it and for the expenses incurred in the defense of the lawsuit. Contractor appeals. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

David J. Sneed, Cynthia B. Ferguson, Brentwood, For Appellant, McKinnon Bridge Company, Inc.

Hugh C. Howser, Jr., Mary Ellen Morris, David L. Johnson, Nashville, For Appellee, Trinity Industries, Inc.

### OPINION

In April 1994, Trinity Industries, Inc. ("Trinity," "Plaintiff," or "Appellee") and McKinnon Bridge Company, Inc. ("McKinnon," "Defendant," or "Appellant") entered into a written Agreement (the "Agreement") wherein Trinity agreed to fabricate and deliver structural steel for the building of a bridge over the Tennessee River near Clifton, Tennessee. McKinnon was the general contractor for the Tennessee Department of Transportation ("TDOT") on the bridge project and Trinity was McKinnon's steel fabrication subcontractor. McKinnon also subcontracted with ABC Contractors, Inc. ("ABC") to install the structural steel furnished by Trinity. The Agreement between Trinity and McKinnon fully incorporated the terms of the bid quotation submitted by Trinity on September 3, 1993 (the "Quotation"). Regarding the incorporation of the Quotation, the Agreement reads, in relevant part as follows:

Trinity Quotation No. B77-M93 dated 9/3/93 is incorporated herein and forms a binding part of this agreement. B77-M93 shall prevail over any conflicts, additions, modifications or omissions contained herein, except as noted.

Paragraph Eighteen of the Quotation, as incorporated by the Agreement, reads as follows concerning McKinnon's obligation to indemnify Trinity:

...As between you [McKinnon] and us [Trinity], you [McKinnon] assume all liability for injury to persons and damage to property resulting from any handling of the steel from the time the truck reaches the jobsite, and you agree to hold us [Trinity] and our [Trinity's] insurer harmless from any such liability. We [Trinity] agree to indemnify and hold you [McKinnon] harmless from claims and liens by any of our [Trinity's] suppliers or subcontractors because of our [Trinity's] failure to discharge all obligations to them. You [McKinnon] shall indemnify and hold us [Trinity] harmless and defend us [Trinity] from any claim or litigations occasioned by deficiencies in Design, Drawings, and Specifications provided to us [Trinity] by you [McKinnon], and from any loss or liability resulting from the failure, action or inaction of any party over which we [Trinity] have no control.

On May 16, 1995, one ABC worker died and two others were injured when a segment of the bridge being constructed by McKinnon collapsed, resulting in several suits for the losses and damages: *William M. Robinson and David Robinson v. Trinity Industries, Inc.*, No. 97-1093, *Carres Kennedy v. Trinity Industries, Inc.*, No. 97-1094, and *Charles T. White v. Trinity Industries, Inc.*, No. 97-1118. The suits were originally filed in state court but were later removed to federal court where they were consolidated. (for purposes of this opinion, these cases are collectively referred to as the "Federal Suits").[1] In addition to the Federal Suits, *Trinity Industries, Inc. v. McKinnon Bridge Company, Inc., Safeco Insurance Company, J. Bruce Saltsman, Sr., Commissioner, Department of Transportation, State of Tennessee*, No. 95-3587-III-II, was filed in the Chancery Court of Davidson County, Tennessee, seeking damages for breach of contract (hereinafter referred to as "Trinity I").[2]

---

[1] Fidelity Casualty Company and ABC Contractors, Inc. were intervening plaintiffs in the first two actions and the third action was brought by Fidelity Casualty Company and ABC Contractors, Inc. in the name of Charles White as a subrogation claim for workers compensation benefits paid to him as a result of the bridge collapse.

[2] In addition to the Federal Suits and Trinity I, McKinnon also brought suit against ABC in an action styled *McKinnon Bridge Company, Inc. v. ABC Contractors, Inc.*, No. 99-1329-II, in the Chancery Court of Davidson County, Tennessee.

The suit from which this appeal arises (hereinafter "Trinity II") was filed on November 30, 1999, by Trinity against McKinnon, in the Chancery Court of Davidson County, Tennessee. Trinity's Complaint, reads, in relevant part, as follows:

9. As a result of the collapse of the bridge, Trinity has been sued in three separate lawsuits that have been consolidated for trial and are presently pending in the United States District Court for the Western District of Tennessee at Jackson [the Federal Suits]...

\*           \*           \*

11. Trinity has incurred reasonable attorneys fees, expenses and charges for expert witnesses in defending the federal court cases to date and will continue to incur additional expenses through trial preparation and trial.

12. From September 13 through September 28, 1999, Trinity, McKinnon and Safeco tried the case [Trinity I]. At the conclusion of all the proof in that case, Chancellor McCoy found that "the only cause for the collapse of the bridge was the removal of cross-frame FG4, to the exclusion of any fabrication errors in the steel structures." An Order granting Trinity a judgment against McKinnon and Safeco Insurance Company was entered in that case on October 27, 1999.

13. Robert Carl Smith, the supervisor for ABC, made the decision on May 16, 1995, to remove cross-frame FG4.

14. Removing cross-frame FG4 left a 150 ft. length of girder G1 of the bridge without lateral support.

15. It was the duty and responsibility of McKinnon and its erection subcontractor, ABC, to develop and implement an erection plan or procedure for the erection of the bridge.

16. It was the duty and responsibility of McKinnon and its erection subcontractor, ABC, to erect the bridge safely and maintain the stability of the structure during the entire erection process.

17. Trinity had no duty or responsibility to erect the bridge.

18. Trinity had no contractual relationship with ABC and no control over the work performed by ABC.

-3-

19. In the case styled <u>McKinnon Bridge Company, Inc. v. ABC Contractors, Inc.</u>, in the Chancery Court for Davidson County, Tennessee, No. 99-1329-II, McKinnon has alleged that the collapse of the bridge was directly and proximately caused by the "acts and/or omissions of ABC while erecting the structural steel for the Project." In that case McKinnon seeks a judgment against ABC for damages resulting from ABC's negligence and breach of contract, and for indemnity for the amount of any judgment in favor of Trinity against McKinnon.

20. Trinity has demanded that McKinnon and Safeco perform their contractual indemnity and hold harmless obligations. To date, they have failed and/or refused to do so. Wherefore, plaintiff prays as follows:

1. That plaintiff be indemnified and held harmless by the defendants and awarded a judgment against the defendants for any and all loss or liability incurred by it, including but not limited to attorney's fees and defense costs, resulting from the federal court cases.

On January 11, 2000, McKinnon filed its Answer denying the claims asserted by Trinity. McKinnon's Answer reads, in relevant part, as follows:

20. McKinnon admits that on or about September 30, 1999, Trinity demanded that McKinnon and/or Safeco indemnify and hold Trinity harmless in the federal court actions alleged in paragraph 9 of the Complaint. McKinnon further admits that it has refused to accept Trinity's tender of its defense, but denies that it has any contractual obligation to do so.

21. McKinnon Bridge denies that Trinity is entitled to the relief prayed for in the Complaint.

\*　　　　　　　　\*　　　　　　　　\*

23. For further plea, McKinnon Bridge alleges upon information and belief that the plaintiffs in the federal court action alleged in paragraph 9 of the Complaint seek to recover damages from Trinity that were caused by the negligence of Trinity. McKinnon Bridge denies that its contract with Trinity requires that it indemnify and/or hold harmless Trinity for any claims arising out of the negligence of Trinity.

On March 7, 2000, Trinity filed a Motion for Partial Summary Judgment, along with a Statement of Undisputed Material Facts. In its Motion, Trinity asserts that:

> ...it [Trinity] is entitled to partial summary judgment as a matter of law because there is no genuine issue of material fact that defendants, McKinnon Bridge Company, Inc. and Safeco Insurance Company of America, are collaterally estopped from disputing that the indemnity provision of the contract entered into between the parties requires McKinnon to indemnify Trinity for all claims brought by third parties against Trinity arising out of the collapse of the bridge at issue.

On April 10, 2000, McKinnon filed a Motion for Summary Judgment, along with a response to Trinity's statement of undisputed facts. McKinnon's Motion for Summary Judgment reads, in pertinent part, as follows:

> ...In support of this Motion, McKinnon Bridge would show that the contract of indemnity sought to be enforced by the Plaintiff does not encompass the claims for which indemnification is sought; that there is no genuine issue as to any material fact; and, that McKinnon Bridge is entitled to summary judgment in this cause as a matter of law.

The trial court conducted a hearing on Trinity's Motion on April 19, 2000. Trinity's Motion was denied by Order dated May 4, 2000 because the trial court found the Motion to be "premature."

On May 30, 2000, Trinity filed a Renewed Motion for Summary Judgment. On May 31, 2000, Trinity filed a response to McKinnon's statement of additional material facts. On July 12, 2002, the trial court conducted a hearing on both Trinity's Renewed Motion for Summary Judgment and the Motion for Summary Judgment filed by McKinnon. By Order entered July 26, 2002, the trial court denied McKinnon's Motion for Summary Judgment and granted Trinity's Renewed Motion for Summary Judgment. The Order reads, in relevant part, as follows:

> This matter came on to be heard on July 12, 2002, upon cross Motions for Summary Judgment by plaintiff, Trinity Industries, Inc., and defendant McKinnon Bridge Company, Inc. Upon consideration of the motions, legal memoranda and other materials filed in support of the motions, statement of counsel and the entire record, this Court finds that there is no genuine issue of material fact existing between the parties and that plaintiff, Trinity Industries, Inc., is entitled to a judgment against the defendant McKinnon Bridge Company, Inc., for all amounts it incurred in defending the cases in the United States District Court for the Western District of Tennessee at Jackson...,

which shall include attorneys fees, expert witness fees, expenses for court reporters and other litigation related expenses and the amount paid by Trinity Industries, Inc. to settle the above referenced federal cases. In addition, this Court finds Trinity Industries, Inc. is entitled to an award of pre-judgment interest at the statutory rate of 10% per annum from June 16, 2000, the date of the settlement of the federal court cases, to the date of the entry of this Order.

In support of its motion for summary judgment, Trinity Industries, Inc. submitted proof that it paid $250,000.00 in settlement of the federal cases, and that it paid $704,719.30 in attorneys fees, expert witness fees, court reporter fees and other litigation expenses in defending the federal court cases. Prejudgment interest at 10% on the entire amount from June 16, 2000, to the date of the entry of this order is another $190,943.86. The Court hereby allows defendant McKinnon Bridge Company, Inc. Thirty (30) days from the entry of this Order to review the billing records and other documents previously produced by plaintiff, to give notice to Trinity Industries, Inc. and the Court of any objection it had to any of the amounts stated herein, and to set the objection for further hearing by this Court.

If McKinnon Bridge Company, Inc. does not make objection to the amounts stated above within thirty (30) days of the entry of this Order, this Order shall be a final judgment from which execution may issue for Trinity Industries, Inc. against McKinnon Bridge Company, Inc. in the amount of $1,145,663.16.

Pursuant to this Order, McKinnon filed an "Objection to Plaintiff's Statement of Damages Set Forth in Order Entered July 26, 2002 and Motion to Set Hearing on Damages," on August 26, 2002. Following a hearing on September 27, 2002, the trial court entered an Order awarding a judgment in favor of Trinity in the amount of $1,030,692.00. McKinnon appeals from the Order of the trial court, granting Trinity's Motion for Summary Judgment and denying McKinnon's. McKinnon raises the following issues for our review, as stated in its brief:

I. Did the trial court err in granting Trinity Industries, Inc.'s Motion for Summary Judgment?

II. Did the trial court err in denying McKinnon Bridge Company, Inc.'s Motion for Summary Judgment?

The issues will be considered together.

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter

of law.  Tenn. R. Civ.P. 56.04.  The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists.  *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).  On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence.  Summary judgment is a preferred vehicle for disposing of purely legal issues.  *See Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993); *Bellamy v. Federal Express Corp.*, 749 S.W.2d 31 (Tenn. 1988).  Since the construction of a written contract involves legal issues, construction of the contract is particularly suited to disposition by summary judgment.  *Browder v. Logistics Management, Inc.*, 1996 LEXIS Tenn. App. 227 (Tenn. Ct. App. 1996); *see also Rainey,* at 119.   Since only questions of law are involved here, there is no presumption of correctness regarding the trial court's grant of summary judgment.  *Bain* at 622.  Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court.  *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

McKinnon concedes in its brief that there is no conflict as to any material fact.  It further states in the reply brief: "Trinity clearly incurred a loss in the form of attorney's fees, litigation expenses and settlement costs in connection with the federal court lawsuits."  There is no issue presented by McKinnon concerning the reasonableness of the settlement and the expenses incurred by Trinity.  Primarily, McKinnon asserts that the indemnity clause in the agreement does not provide indemnification to Trinity for expenditures "traceable to allegations of its own negligence."  We first must construe the contractual provisions upon which this action is premised:

> You [McKinnon] shall indemnify and hold us [Trinity] harmless and
> defend us from any claim or litigations occasioned by deficiencies in
> Design, Drawings and Specifications provided to us by you, and from
> any loss or liability resulting from the failure, action or inaction of
> any party over which we [Trinity] have no control.

According to the plain language of the Agreement, McKinnon is required to indemnify Trinity if Trinity can establish (1) that it has suffered a loss or incurred a liability and (2) that such loss or liability is the result of some failure, action or inaction of any party over which it had no control.  Although McKinnon does not dispute the fact that Trinity incurred losses and expenses in connection with the Federal Suits, McKinnon contends that those losses were not predicated upon the acts or failure to act of any party over which Trinity had no control.  Rather, McKinnon insists that Trinity is seeking indemnification for its own negligence.  Specifically, McKinnon asserts that the losses Trinity incurred in the Federal Suits were the result of defending, and settling, allegations that Trinity was guilty of negligence that directly caused the collapse of the bridge and the resulting injuries suffered by the plaintiffs in the Federal Suits.[3]  McKinnon relies primarily upon two cases decided in the Court of Appeals: *McClain v. Illinois Central Gulf Railraod v. Distribution and*

---

[3] The law favors settlement of disputes by compromise.  *See Third Nat. Bank v. Scribner*, 212 Tenn. 400, 370 S.W.2d 482 (1963); settlements of litigation are not contrary to public policy and are to be encouraged. *Alexander v. Rhodes*, 63 Tenn. Ct. App. 452, 474 S.W.2d 655 (1971).

*Transportation Services, Inc.*, 1991 WL 193845, 4 (Tenn. Ct. App. 1991) and *Power Equipment Co. v. J. A. Jones Construction Co.*, 1989 WL 9544 (Tenn. Ct. App. 1989)(affirmed by the Tennessee Supreme Court, 1990 WL 81992 (Tenn. 1990). We have reviewed both of these cases, which turn on contract interpretation. The particular contracts involved in the cases were interpreted by the Court to provide indemnification for the indemnitee's own negligence, without complying with the particularity requirement for an express intention as required to make such an indemnification. We do not have that situation in the case before us. Mere allegations of negligence, as in the case before us, are not sufficient to trigger interpretation of the clause before the Court, as asserted by McKinnon.

The indemnification clause of the Agreement, as set out *supra*, clearly anticipates McKinnon's obligations to Trinity as arising *after* Trinity has incurred loss and *after* that loss has been shown to be the result of negligent acts committed by some entity over which Trinity had no control. To make this clause applicable before termination of the Federal Suits (i.e. to base applicability only on the allegations of Trinity's negligence found in the federal plaintiffs' complaints) would be an exercise in conjecture. The above contractual provision provides for indemnity to Trinity in two situations. The first situation requires that McKinnon indemnify and hold Trinity harmless and defend Trinity from any claim or litigation because of deficiency of the material furnished by McKinnon to Trinity. We do not have this situation in the case before us. The second part of the indemnity agreement is that McKinnon "shall indemnify and hold us [Trinity] harmless . . . from any loss or liability resulting from the failure, action or inaction of any party over which we [Trinity] have no control."

Under the indemnity agreement, Trinity must prove that it sustained loss or liability because of action or inaction of a party over which it had no control. As heretofore noted, it is conceded that Trinity sustained loss and the amount thereof is not in dispute. Therefore, the only prerequisite to recovery by Trinity is proof that the loss was occasioned by a party over which it had no control. To sustain this element, Trinity relies upon the finding of the chancery court of Trinity I that the bridge collapsed as a result of the action of ABC in removing the FG4 cross-frame. The trial court's findings of fact and conclusions of law in the Trinity I case clearly found that "the only cause of the collapse of the bridge was the removal of cross-frame FG4 by the erector ABC, to the exclusion of any fabrication errors." The trial court entered judgment for Trinity industries against the McKinnon Bridge Company and entered judgment for Trinity on McKinnon's counter-claim. McKinnon appealed to this Court and argued on appeal, among other things, that the issue of the bridge collapse was not tried or actually tried in the court below. However, this Court noted:

> McKinnon alleged as an affirmative defense that the defective steel furnished by Trinity caused the bridge to collapse. McKinnon also filed a counterclaim against Trinity for breach of contract and for negligently fabricating the steel, as well as third party actions against TDOT, E.L. Conwell & Co., and Tensor alleging that their negligence contributed to the problems with the steel. By the time of the trial in September of 1999, McKinnon's counterclaim and its third party

claims had been dismissed, but the trial went forward on the original claim by Trinity and McKinnon's affirmative defenses.

***Trinity Industries v. McKinnon Bridge Co.***, 77 S.W.3d 159, 177 (Tenn. Ct. App. 2001).

This Court pointed out that Trinity offered testimony from an expert witness "who gave his opinion that the bridge collapse, not because of any fabrication defects in the steel, but because a cross brace had been removed by the erection contractor." ***Id.*** at 179.

After its review, this Court concluded "that what caused the bridge to collapse was triable and was actually tried in the September 1999 trial." ***Id.*** at 179. The judgment of the trial court was affirmed.

To satisfy its burden of proof that the cause of the bridge disaster was the negligent act of a party over which Trinity had no control, Trinity relies upon the Trinity I decision under the doctrine of collateral estoppel. In ***Beaty v. McGraw***, 15 S.W.2d 819 (Tenn. Ct. App. 1998), this Court, through Judge Koch, extensively discussed the doctrine and the use of collateral estoppel:

> Collateral estoppel is an issue preclusion doctrine devised by the courts. ***See Dickerson v. Godfrey***, 825 S.W.2d 692, 694 (Tenn. 1992); ***Goeke v. Woods***, 777 S.W.2d 347, 349 (Tenn. 1989); ***Morris v. Esmark Apparel, Inc.***, 832 S.W.2d 563, 565 (Tenn. Ct. App. 1991). Like other preclusion doctrines, its purposes are to conserve judicial resources, to relieve litigants from the cost and vexation of multiple lawsuits, and to encourage reliance on judicial decisions by preventing inconsistent decisions. ***See Allen v. McCurry***, 449 U.S. 90, 94, 101 S. Ct. 411, 414-15 (1980); ***Disimone v. Browner***, 121 F.3d 1262, 1267 (9th Cir. 1997).
>
> Judge Friendly succinctly explained issue preclusion when he observed over thirty years ago that "[w]here the litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." ***Zdanok v. Glidden Co.***, 327 F.2d 944, 953 (2d Cir. 1964). Thus, as our courts have construed the collateral estoppel doctrine, it bars the same parties or their privies from relitigating in a second suit issues that were actually raised and determined in an earlier suit. ***See Massengill v. Scott***, 738 S.W.2d 629, 631 (Tenn. 1987); ***Collins v. Greene County Bank***, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995). Stated another way, when an issue has been actually and necessarily determined in a former action between the parties, that determination is conclusive against them in subsequent litigation. ***See King v.***

*Brooks*, 562 S.W.2d 422, 424 (Tenn. 1978); *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995).

The party seeking to rely on the doctrine of collateral estoppel has the burden of proof. *See Dickerson v. Godfrey*, 825 S.W.2d at 695. To invoke the doctrine successfully, the party must demonstrate:

1.      that the issue sought to be precluded is identical to the issue decided in the earlier suit;

2.      that the issue sought to be precluded was actually litigated and decided on its merits in the earlier suit;

3.      that the judgment in the earlier suit has become final;

4.      that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and

5.      that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.

15 S.W.3d at 825 (footnotes omitted).

The *Beaty* Court then noted that at common law collateral estoppel doctrine can only be used defensively; thus, preventing a defendant from relitigating a claim that a plaintiff had previously litigated against the defendant and lost. *Id.* at 825. The Court stated:

At common law, the collateral estoppel doctrine required mutuality of the parties and could only be used defensively. Thus, a defendant traditionally employed the doctrine to prevent a plaintiff from relitigating a claim that the plaintiff has previously litigated against the defendant and lost. The United States Supreme Court expanded the application of the collateral estoppel doctrine in federal courts when it discarded the common-law mutuality of parties requirement. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-333, 99 S. Ct. 646, 649-653(1979).

*Id* at 825.

Judge Koch noted that while Tennessee courts have declined to approve the use of nonmutual offensive collateral estoppel, there apparently are no decisions in Tennessee concerning the use of mutual offensive collateral estoppel.

[There are no decisions] in which an appellate court of this state has addressed the propriety of mutual offensive collateral estoppel – that is, permitting the plaintiff to foreclose a defendant from relitigating an issue that the defendant had previously litigated unsuccessfully in another action against the same plaintiff.[4] On the face of it, permitting the use of mutual offensive collateral estoppel seems to provide all the benefits of the issue preclusion doctrine without any of the perceived undesirable consequences of nonmutual offensive collateral estoppel. Recognizing the doctrine will not increase the total amount of litigation, and it will not necessarily be unfair to the defendant.

*Id.* at 825 (citations omitted).

The Court then held that within its discretion the trial court may permit the use of mutual offensive collateral estoppel. The Court said:

In exercising its discretion, the trial court may consider (1) whether the plaintiff could have joined the former suit but decided instead to adopt a "wait and see" attitude, (2) whether the defendant had an incentive to defend the former suit vigorously, and (3) whether the judgment on which the plaintiff seeks to rely is itself inconsistent with previous judgments against the defendant. ***See Parklane Hosiery Co. v. Shore***, 439 U.S. at 330-31, 99 S. Ct. at 651-52; ***Winters v. Diamond Shamrock Chem. Co.***, 149 F.3d at 391.

*Id*. at 826.

In the instant case, the trial court properly allowed Trinity to utilize the doctrine of collateral estoppel in proving the cause of the bridge collapse.

Had Trinity been found negligent in the Federal Suits or in the Trinity I suit, then clearly the indemnification clause at issue would not be applicable. However, the negligence that caused the bridge collapse was found to be on the part of ABC. ABC was a subcontractor of McKinnon's and was under no control or direction of Trinity. As a direct result of the negligent acts of ABC, a "party over which [Trinity had] no control," Trinity was embroiled in the Federal Suits and forced to defend itself. And it is undisputed that Trinity incurred losses in this defense.

---

[4]This court may have applied mutual offensive collateral estoppel in a case involving the construction of a will where the parties in the two proceedings were in privity with each other. *See Aclin v. Speight*, 611 S.W.2d 54, 55 (Tenn. Ct. App. 1980).

Although McKinnon would have us read the plain language of this Agreement so as to release McKinnon from its obligations merely because the plaintiffs in the Federal Suits *alleged* that Trinity was negligent, we cannot read the indemnification clause so expansively. A contract is not ambiguous merely because the parties have different interpretations of the contract's various provisions, *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d at 462 (citing *Oman Constr. Co. v. Tennessee Valley Auth*., 486 F.Supp. 375, 382 (M .D.Tenn.1979)), nor can this Court create an ambiguity where none exists in the contract. *Cookeville P.C.*, 884 S.W.2d at 462 (citing *Edwards v. Travelers Indem. Co.*, 300 S.W.2d 615, 617-18 (Tenn.1957)). The language of the indemnification clause is clear and unambiguous. Where the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. *Sutton v. First Nat. Bank of Crossville*, 620 S .W.2d 526 (Tenn.Ct.App.1981). Applying this standard, we find that the trial court did not err in granting Trinity's Motion for Summary Judgment and denying McKinnon's motion.

The Order of the trial court granting Trinity's Motion for Summary Judgment and denying McKinnon's Motion for Summary Judgment is affirmed. Costs of this appeal are assessed to the Appellant, McKinnon Bridge Company, Inc., and its surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.