# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
## July 16, 2013 Session

## JOHN D. GLASS v. SUNTRUST BANK, ET AL.

**Direct Appeal from the Probate Court for Shelby County**
**Nos. D-9423 & D-2134      Karen D. Webster, Judge**

**No. W2013-00404-COA-R3-CV - Filed September 11, 2013**

Plaintiff beneficiary filed an action challenging the reasonableness of an executor's fee taken by SunTrust as Executor.  The probate court upheld the executor's fee, and Plaintiff then filed an action against SunTrust Bank and SunTrust as Trustee.  The trial court ultimately granted summary judgment to Defendants based upon collateral estoppel and res judicata. We reverse the grant of summary judgment in favor of Defendants and we remand for further proceedings.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Probate Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., concurred in results only, and J. STEVEN STAFFORD, J., joined.

Donald W. Pemberton, Memphis, Tennessee, for the appellant, John D. Glass

Olen W. Bailey, Jr., Memphis, Tennessee, for the appellees, Suntrust Bank; Suntrust Bank, Trustee of the Ann Haskins Whitson Glass Trust; and Suntrust Bank, Executor of the Estate of Ann Haskins Whitson Glass

**OPINION**

**I.  FACTS & PROCEDURAL HISTORY**

Ann Haskins Whitson Glass created a Trust in 1994, the terms of which she amended in a June 2000 "Amended and Restated Trust Agreement" ("Trust Agreement").  As provided in the Trust Agreement, Ms. Glass acted as primary trustee until her death on January 2, 2007.  At Ms. Glass' death, the Trust became irrevocable and National Bank of Commerce was appointed as successor trustee.  Similarly, pursuant to Ms. Glass' "Last Will and Testament" (the "Will"), National Bank of Commerce was appointed Executor of Ms. Glass' Estate.  SunTrust Bank, the successor institution to National Bank of Commerce, became both the successor trustee of the Trust and executor of the Estate.

Ms. Glass' son, John D. Glass, was named as a beneficiary of both the Trust and the Will.  On January 26, 2009, Mr. Glass filed a "Petition of Beneficiary, John D. Glass to Recover Executor's Fee Not Approved by the Court" in the Shelby County Probate Court ("First Probate Case").[1]  In his petition, Mr. Glass claimed that "SunTrust [had] paid itself the sum of Forty-Nine Thousand ($49,000.00) Dollars as an Executor's fee" out of Trust funds without court approval and/or Mr. Glass' approval.  Mr. Glass stated that the probate Estate totaled only $83,588, and he contended that SunTrust as Trustee "should have charged a Trustee's fee rather than arbitrarily paying itself an Executor's fee based on the assets of the Trust[,]" which he later claimed totaled $2,589,636.00. Mr. Glass argued that the $49,000 executor's fee was "excessive and unreasonable" and that "Executor SunTrust [should] be required to repay the fee" or alternatively, that the court should conduct a hearing regarding the fee.[2]  In response, SunTrust Bank "in its capacity as Personal Representative[,]"[3] filed a "Motion to Dismiss" on several grounds including failure to state a claim, lack of standing, and "improper proceeding" due to Mr. Glass' failure to file a separate action "in the name of the Trust[.]"

_____

[1]The case was styled "In re: Estate of Ann Haskins Whitson Glass, Deceased."

[2]Also on January 26, 2009, Mr. Glass filed an action against "SunTrust Bank, Trustee of Ann Glass Trust" in the Shelby County General Sessions Court "for damages resulting from failure to lease farm land at market [value] and leasing land under an expired lease[.]" This suit, however, was apparently non-suited.

[3]"'Personal representative,' when applied to those who represent a decedent, includes executors and administrators, unless the context implies heirs and distributees[.]" **Tenn. Code Ann. §1-3-105(22)**.

-2-

Hearings were held in March and May of 2009 after which the trial court entered an order on July 14, 2009,[4] in which it denied SunTrust's Motion Dismiss and in which it approved the $49,000 fee "paid by SunTrust Bank as trustee . . . to SunTrust Bank as executor or personal representative of the Estate[.]" Mr. Glass did not seek an appeal from this order.

On September 16, 2009, Mr. Glass filed a "Complaint for Damages for Breach of Trust, Breach of Fiduciary Duties, Mismanagement, Negligence and Breach of Duty to Diversify" in the Shelby County Chancery Court against SunTrust Bank, Inc.,[5] Suntrust Bank as Trustee, and SunTrust Bank as Executor[6] ("Second Probate Case"). Defendants SunTrust Bank, SunTrust Bank as Trustee, and SunTrust Bank as Executor ("Defendants") filed a motion and an amended motion seeking to transfer the case to the Shelby County Probate Court or, in the alternative, to dismiss the case. The Defendants argued that the Complaint should be dismissed, among other reasons, due to issue preclusion and res judicata and because the chancery court lacked appellate jurisdiction over the prior probate court case.

On April 16, 2010, the chancery court transferred the case to the probate court noting that "the judge in Probate Court has already heard most of the proof which will be presented again to decide this matter." The Defendants then filed a "Second Amended Motion to Dismiss Amended Complaint" in the probate court, again arguing that Mr. Glass' amended Complaint should be dismissed due to issue preclusion and res judicata.

Following a hearing on August 19, 2010, the probate court entered an order dismissing Mr. Glass' amended Complaint with prejudice, finding that the Defendants had successfully demonstrated the applicability of both res judicata and collateral estoppel. Mr. Glass timely filed a Notice of Appeal to this Court on November 17, 2010.

In an August 26, 2011 Memorandum Opinion, this Court found that the July 14, 2009 Order entered in the First Probate Case was not a final order because the Order reserved the issue of attorney fees for a future hearing and because "there [was no] indication that th[e] order was meant to close the Estate as a final adjudication of all pending Estate issues[,]" and

---

[4]This Order incorporated the probate court's oral ruling of June 3, 2009.

[5]Mr. Glass later amended his complaint to remove the word "Inc."

[6]The Complaint originally named "SunTrust Bank Memphis, Trustee of the Ann Haskins Whitson Glass Trust" and "SunTrust Bank Memphis, Executor of the Estate of Ann Haskins Whitson Glass," but the Complaint was later amended to remove the word "Memphis."

therefore, that the criteria for both collateral estoppel and res judicata had not been met.[7] ***Glass v. SunTrust Bank***, No. W2010-02527-COA-R3-CV, 2011 WL 3793495, at *1, 5 (Tenn. Ct. App. Aug. 26, 2011). Accordingly, we reversed the probate court's dismissal of Mr. Glass' amended complaint and we remanded for further proceedings. ***Id.*** at *5.

On remand, on September 26, 2011, the Defendants filed an answer to Mr. Glass' amended Complaint, which included counterclaims against Mr. Glass. On November 28, 2011, the Defendants filed a motion to revise the July 14, 2009 order in the First Probate Case, which the probate court granted on April 12, 2012. The probate court entered a "Final Order on Motion to Dismiss, on Motion for Directed Verdict, and on Petition to Recover Fees" which added the following language to the July 14, 2009 order:

> G. The probate Estate is not yet closed. The closing of the probate Estate is reserved for a future hearing and ruling.
>
> H. Except for the Court's reservation of ruling on the allocation and amount of attorney's fees for SunTrust bank as outlined in Paragraph F[8] above and except for the Court's reservation of ruling regarding the closing of the probate Estate as outlined in Paragraph G above, all other claims are adjudicated and all other rulings in this Order are declared to be a final judgment pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure, the Court expressly determining that there is no just reason for delay and expressly directing that this order be entered as a final judgment as to the claims adjudicated.

On July 16, 2012, the Defendants filed a "Motion for Summary Judgment Based on Issue Preclusion and Res Judicata" along with a statement of undisputed facts. Mr. Glass responded to the motion and to the Defendants' undisputed facts, and he filed his Affidavit. In his response to Defendants' undisputed facts, however, Mr. Glass failed to support any of his disputed facts with specific citations to the record as required by Tennessee Rule of Civil

---

[7]We noted that the probate court, on February 2, 2011, had amended its November 12, 2010 order entered in the Second Probate Case to make that order final and appealable, but that such entry had no bearing on the finality of the order entered in the First Probate Case for purposes of collateral estoppel and res judicata. ***Glass***, 2011 WL 3793495, at *4.

[8]Paragraph F provided: "SunTrust Bank is entitled to reimbursement for attorney's fees in defending the Petition as an Estate administration expense. The issue of whether or not the attorney's fees should be allocated to and paid from the Petitioner's portion of the Trust and Estate or to and from the entire Trust and Estate is reserved for a future hearing and ruling. Furthermore, the issue of the amount of such attorney's fees is reserved for a future hearing and ruling."

Procedure 56. Accordingly, the probate court deemed Defendants' facts, undisputed.[9]

Following a hearing on September 19, 2012, the probate court entered an order on December 3, 2012, in which it granted summary judgment in favor of the Defendants based upon issue preclusion and res judicata. The order incorporated the transcript of the court's oral ruling of November 7, 2012,[10] as well as its findings and reasoning set forth in its February 2, 2011 order, which incorporated the oral ruling of November 2, 2010. Like the revised July 14, 2009 order, the December 3, 2012 order granting summary judgment noted that issues regarding attorney fees and closure of the Estate remained open; however, the order was certified as final pursuant to Tennessee Rule of Civil Procedure 54.02. On December 19, 2012, Mr. Glass timely filed a second Notice of Appeal to this Court from the December 3, 2012 order.

## II.  ISSUES PRESENTED

Mr. Glass presents the following issues for review, as summarized:

1.      Whether Mr. Glass' Second Probate Case was precluded under collateral estoppel; and

2.      Whether Mr. Glass' Second Probate Case was precluded under *res judicata*.

For the following reasons, we reverse the probate court's grant of summary judgment in favor of Defendants, and we remand for further proceedings.

## III.  STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." **Green v. Green***, 293 S.W.3d 493, 513 (Tenn. 2009).

---

[9]Mr. Glass does not challenge this finding on appeal.

[10]Orally, the probate court incorporated its November 12, 2010 "Order Granting Second Amended Motion to Dismiss Amended Complaint," which incorporated its November 2, 2010 oral ruling.

"The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green,* 293 S.W.3d at 513 (citing *Martin v. Norfolk S. Ry.,* 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County,* 259 S.W.3d 705, 710 (Tenn. 2008)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Martin,* 271 S.W.3d at 83 (citing *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 5 (Tenn. 2008)).[11] In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* at 84 (citing *Blair v. W. Town Mall,* 130 S.W.3d 761, 768 (Tenn. 2004)). "It is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Hannan*, 270 S.W.3d at 8. "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." *Martin*, 271 S.W.3d at 83 (citing *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993)).

If the moving party does make a properly supported motion, "[t]he non-moving party must then establish the existence of the essential elements of the claim." *McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998). The nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Martin,* 271 S.W.3d at 84 (citing *McCarley,* 960 S.W.2d at 588; *Byrd,* 847 S.W.2d at 215). "The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Id.* (citing *McCarley,* 960 S.W.2d at 588; *Byrd,* 847 S.W.2d at 215 n.6). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley,* 960 S.W.2d at 588). The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness.

---

[11]Recently, the Tennessee General Assembly enacted a law that legislatively reversed the Tennessee Supreme Court's holding in *Hannan*. *See* Tenn. Code Ann. § 20-16-101. However, the statute applies only to cases filed on or after July 1, 2011. Thus, in this appeal, we apply the summary judgment standard set forth in *Hannan*.

## IV. DISCUSSION

The sole issues before this Court are whether the probate court erred in finding either the doctrine of res judicata or collateral estoppel applicable so as to bar the Second Probate Case.

At the outset, we must discuss an argument raised by Defendants on appeal. As stated above, Mr. Glass' response to Defendants' statement of material facts included no citations to the record, and therefore, the trial court deemed undisputed the material facts asserted therein. In their statement of material facts, Defendants asserted that each element of both collateral estoppel and res judicata had been established, and on appeal, Defendants argue that the undisputed "facts" necessitate a grant of summary judgment in their favor on the ultimate issues of collateral estoppel and res judicata. Respectfully, however, notwithstanding the trial court's decision regarding Rule 56, this Court is not bound by legal conclusions couched as "facts"–specifically, whether the elements of collateral estoppel and res judicata have been successfully demonstrated. *See Jackson v. Dhillon*, No. M2012-00410-COA-R3-CV, 2013 WL 2395044, at *3 (Tenn. Ct. App. May 30, 2013) (citations omitted) ("The determination of whether res judicata or collateral estoppel applies is a question of law.").

### A. Collateral Estoppel

"'Collateral estoppel is an issue preclusion doctrine devised by the courts.'" *Trinity Inds., Inc. v. McKinnon Bridge Co., Inc.*, 147 S.W.3d 225, 232 (Tenn. Ct. App. 2003) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 825 (Tenn. Ct. App. 1998)). The doctrine operates to "'bar[] the same parties or their privies from relitigating in a second suit issues that were actually raised and determined in an earlier suit.'" *Id.* (quoting *Beaty*, 15 S.W.3d at 825). "'Stated another way, when an issue has been actually and necessarily determined in a former action between the parties, that determination is conclusive against them in subsequent litigation.'" *Id.* (quoting *Beaty*, 15 S.W.3d at 825). It is unnecessary that the current and former suit involve the same cause of action. Collateral estoppel may be invoked to bar the relitigation of an issue in a second lawsuit "'based upon a different cause of action, so long as the determination of such issue in the former action was necessary to the judgment[.]'" *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009) (quoting *Massengill v. Scott*, 738 S.W.2d 629, 631-32 (Tenn. 1987)). Our Supreme Court has "cited the promotion of finality in the litigation, the conservation of judicial resources, and the prevention of inconsistent decisions as policy considerations warranting the application of collateral estoppel in civil litigation." *Id.* (citing *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001)).

The party invoking the doctrine of collateral estoppel must prove:

1.      that the issue sought to be precluded is identical to the issue decided in the earlier suit;
2.      that the issue sought to be precluded was actually litigated and decided on its merits in the earlier suit;
3.      that the judgment in the earlier suit has become final;
4.      that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and
5.      that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.

*Id.* (quoting *Beaty*, 15 S.W.3d at 825).

On appeal, Mr. Glass argues that the trial court erred in dismissing the Second Probate Case based upon collateral estoppel because, he contends, none of the above-cited elements was successfully demonstrated. We address these elements below.

**Identity & Litigation of Issues**

In his bare-bones Complaint in the First Probate Case, Mr. Glass argued only that the $49,000 fee taken by SunTrust as executor was excessive and unreasonable, that such fee was incorrectly paid as an executor's fee when it should have been paid as a trustee's fee, and therefore, that the fee should be repaid or a hearing held to consider its propriety. In contrast, in his Complaint in the Second Probate Case, Mr. Glass asserted several theories of recovery against Defendants SunTrust Bank, SunTrust as Executor and SunTrust as Trustee: (1) breach of trust and breach of fiduciary duties for failing to develop, communicate and implement a plan for diversification of Trust assets, and for electing to treat the assets of the Trust as part of the Estate and for receiving a fee as Executor rather than as Trustee; (2) mismanagement and negligence for failing to select an alternate valuation date for Federal and Tennessee death taxes, for failing to place probate assets in the Trust prior to Ms. Glass' death to avoid probate, for failing to provide Mr. Glass with accurate tax information, for failing to select a favorable fiscal tax year for the Estate, and for leasing farm land in Dyer County without Mr. Glass' consent; and (3) breach of duty to diversify for failing to formulate communicate and implement a plan for diversification of Trust assets. Based upon these theories, Mr. Glass sought the following damages: "no less than $200,000" for breach of trust and breach of fiduciary duties; "no less than $200,000" for mismanagement and negligence; and "no less than $300,000" for breach of duty to diversify.

-8-

On appeal, Mr. Glass contends that "[t]he only issue in the [First Probate Case] was the reasonableness of the Executor's fee" and he repeatedly claims that in the First Probate Case he did not seek damages, but instead sought only approval or disapproval of the fee. Defendants, however, argue that despite the limited allegations in Mr. Glass' First Probate Case Complaint, at the trial in the matter, Mr. Glass "repeatedly alleged . . . that [he] was damaged due to the actions and omissions of Defendant taken as Executor *and as Trustee*[,]" that he "espoused specific amounts of damages[,]" and that each of the issues set forth in the Second Probate Case was considered in the context of resolving SunTrust's entitlement to the $49,000 fee.

To determine whether the issues raised in the Second Probate Case are identical to those issues litigated and decided in the First Probate Case, we have closely examined the transcripts from the March 26, 2009 and May 12, 2009 hearings in the First Probate Case. The transcript reveals that, at trial, Mr. Glass objected to the $49,000 executor's fee based upon SunTrust's alleged mishandling of the Estate. Particularly, Mr. Glass argued that SunTrust "didn't do a good job" because it failed to avoid probate, it increased his tax liability by failing to elect a fiscal year-end, it leased farmland without his consent, it failed to select an alternate valuation date, and it failed to timely distribute Trust assets to him after Ms. Glass' death.

We have also considered the trial court's oral ruling in the First Probate Case.[12] In denying Defendants' motion to dismiss for lack of jurisdiction over nonprobate assets, for failure to sue SunTrust as Trustee, and for lack of standing, the probate court stated:

> There is nothing in th[e Will] language that prevents the Court from exercising its authority in a probate administration to set the executor's fees.
>
>     . . . .
>
> Perhaps the Petitioner brought the wrong action under the estate for attacking the trustee or the assets in the trust. As SunTrust correctly argued, the petition is filed in the name of the estate and not in the name of the trust in both the Court's jurisdiction review and actions taken under the trust. And, two, they were not given notice of their role as trustee in this action.
>
>     . . . .

---

[12]Again, the probate court's oral ruling of June 3, 2009 was specifically incorporated into its order approving the $49,000 fee in the First Probate Case.

Also, a denial of the motion [to dismiss] minimizes cost[s] to the estate and would tend to expedite or advance the administration. It would have been too timely and too costly to reset the petition on the Court's busy [] summer calendar and to notice all interested parties only to have, with high probability, the same parties who are presently before the Court to come in on a new standing.

The probate court went on to summarize the evidence presented at trial and to set forth its reasoning for upholding the $49,000 fee, as follows:

The presentation of the Petitioner's case is as follows: First, there was testimony offered by [Plaintiff] John Douglas Glass. Mr. Glass is the senior vice president of Regions Morgan Keegan, presently a trust officer[.] . . .

Mr. Glass pointed out that SunTrust elected to take a fee as an executor and treated the trust as an estate for fee purposes. . . .

As a lay person, Glass objects to the $49,000 fee taken by SunTrust. Glass testified that his mother wanted to avoid probate by setting upon a revocable living trust. All SunTrust had to do was to place joint title on assets and convey the personal property to the trust. They would not have had to take a fee as an executor at all, Glass testified.

. . . .

Glass further testified that because SunTrust elected to a year-end for tax purposes instead of [fiscal] year-end, his 2007 taxes increased which affected his Social Security and his Medicare.

Glass testified that he never saw the lease on his mother's real estate until nine months after her death. It terminated at the date of her death, but SunTrust continued to lease the property at a rate of $65 an acre when he could have easily gotten $85 an acre.

On cross [Mr. Glass] admits that he didn't have documented proof that he could get 80 to $85 per acre on the land. Mr. Glass testified that he's familiar with the terms of the trust. His assets passed to him on his mother's death, but were not distributed. Thus, he lost - - his loss or an additional cost to him was in the neighborhood of [$134,000.]"

He indicated that he had a loss in the real estate as SunTrust sent a letter asking for his consent to sell the property when under the trust they had authority to sell the property with the Court's approval without the beneficiaries' consent.

At one point there were 11 buyers and SunTrust did not take bids. Now the farm is under contract and the price and the real estate market has decreased.

On cross [Mr. Glass] admitted that he could not offer any documented proof that the real estate had decreased in value. . . .

. . . . The bottom line, [Mr. Glass] testified, is that he thought he would have been given the opportunity to approve the executor's fee.

Glass testified that there were errors in the 2008 schedule K-1 tax statement prepared by SunTrust and there had to be several resubmissions which cost additional money. On cross he admitted that he did not offer any documented proof about the Schedule K-1.

As an expert, [Mr. Glass] testified an executor's fee should have been about $5,000 or less.

. . . .

[Mr. Glass] objects to the amount of the fee based on how the trust was handled. He thinks SunTrust should not get a fee.

. . . .

Gordon Thompson was called to the stand. Mr. Thompson . . . was qualified as an expert CPA and consultant and prepared a value report making three conclusions as agreed.

First, Thompson was asked to calculate the difference in value of the SunTrust and First Horizon stock held by the trust on January 22, 2007, and the date the stock was either sold or distributed. He found the stock lost value during this period.

On cross Thompson admitted that he was not asked to make any

calculations on the value of the stock of the Security Bancorp of Tennessee as he was not asked to consider this stock in his calculation.

. . . .

[Mr. Thompson] was further asked to determine the exposure due on using the figures at the date of death valuation versus those at the alternate valuation date, both of the Federal estate and Tennessee inheritance tax.

Thompson calculated that the estate's fair market value at the date of death was in the neighborhood of $8,000. That's $8,453.06, which resulted in a total additional combination tax exposure of $9,268, 50 percent of which would have been Mr. Glass's additional exposure.

On cross Thompson admitted it would have been beneficial to consider the Security Bancorp of Tennessee stock in making the ultimate decision of whether the valuation date would have been most beneficial to the estate. . . .

. . . .

Here the petition to recover the executor's fees was based on a theory that the executor's fee was excessive and unreasonable. The Petitioner had the burden of proof.

. . . .

In the Defendant's presentation of its case in chief, SunTrust offered proof regarding its calculation of its executor's fee using its published fee schedule for executors.

The proof was as follows:
Mr. Buyer testified as the principal witness for SunTrust and has been the SunTrust [trust] officer for nine and a half years. SunTrust has a published fee schedule for trusts and estates.

. . . .

Buyer reviewed the executor's fee schedule and indicated the minimum charge for the administration, but there were other charges and fees for real estate services, litigation services, closely held stocks, and extraordinary

-12-

services.

. . . .

Buyer testified that the administration was complex, long, and drawn out because the [beneficiary] brothers did not agree.

. . . .

The Court finds that: One, Mr. Glass did not offer any documented proof that the real estate had decreased in value or that he could get a better offer on the lease.

Two, Mr. Glass did not have documented proof regarding the errors on the Schedule K-1.

Three, Mr. Thompson's calculations did not include values for all stock and, as a result, he could not determine which valuation date would have been most beneficial for the estate.

Four, Mr. Thompson offered no proof as to the accuracy of the calculation or the reasonableness of the fee actually taken by SunTrust under its published fee schedule.

Five, there were numerous special circumstances in this case including, but not limited to, the character and disposition of the Petitioner and the type of effects in their handling which drove up the amount of extraordinary services provided.

Six, the same factors, entries, and calculations made under the fee schedule would have been made using our local Rules.

Therefore, the Court holds that the amount of fees SunTrust paid to itself was reasonable and approves the executor's fee of $49,000. This ruling is particularly justified in that it is consistent with Mr. Glass's testimony made in his expert capacity that a fee below the published fee schedule is reasonable. Certainly a $5,000 fee or even no fee at all would be extremely harsh and unreasonable.

In the Second Probate Case, in resolving the collateral estoppel issue, specifically, the identity of issues element, the trial court ruled from the bench as follows:[13]

In the two-day [First] Probate [Case] proceeding, the Plaintiff alleged that the Executor's fee was [un]reasonable and based [] the allegation on the following issues.

Plaintiff's mother wanted to avoid probate by setting up a trust. All SunTrust had to do was to transfer assets to the trust. They would not have had a fee at all. Two, the plaintiff asked SunTrust to elect a fiscal year, but they elected a year-end year resulting in increased taxes.

Three, the Plaintiff's assets were not distributed to him at the date of the Decedent's death. He lost . . . approximately $134,000 because assets were not distributed. Number four, Plaintiff lost on the [Dyer County] real estate. Plaintiff never saw the other lease until nine months after her death.

The lease terminated at her date of death and SunTrust leased the property at $65 an acre when he could have gotten $85 an acre if the property had been transferred to him. Plaintiff had no documented proof he could have gotten more per acre.

Number Five, Plaintiff claimed additional loss on real estate. There were 11 buyers, but bids were not taken. SunTrust had authority to sell property under the Trust with the Court's approval if the beneficiaries could not agree. The farm is under contract but is not sold. As of 2008, the price of real estate had decreased. Plaintiff had no proof offered that land had decreased in value.

Number Six, Plaintiff's claim that tangible assets were sold under value even though the items were sold by an estate sale expert. Seven, Plaintiff claimed he lost money because the entries made on the tax and because of the date of its filing. There was text testimony as to whether the return should have been amended.

Number Eight, Plaintiff claimed he lost money because SunTrust chose the wrong valuation date for Estate tax purposes. Number Nine, Plaintiff claimed he had not received all of his distribution from the Estate. . . .

---

[13]This excerpt is taken from the November 2, 2010 oral ruling.

-14-

Plaintiff claimed he did not receive an explanation of what was in the Estate or what was to him. [sic] He did not receive an inventory; thus, he did not sign off on a list of items.

. . . . Number 11, Plaintiff testified that his objection to the fee is based on how the Trust was handled. The Executor's fee should be $5,000 or less, and then later testified that SunTrust should not get anything.

In the [Second Probate Case] Complaint, the Plaintiff alleged he sustained damages from the Defendants' Breach of Trust, Breach of Fiduciary Duty, Mismanagement, Negligence and Breach of Duty to Diversify raising the following issues:

Number One, whether the Trustee failed to immediately distribute Trust assets to the Plaintiff beneficiary at the time of Decedent's death. . . . Number Two, whether . . . the Trustee failed to transfer assets to the Trust prior to Decedent's death causing an Estate to be probated? . . .

Number Three, whether the Trustee erred in unilaterally electing to administer the Trust . . . as part of the Estate, thereby recouping an Executor's fee based on the value of the Trust? . . . .

Number Four, whether the Executor failed to elect the alternative valuation date for valuing the assets of the Trust included in the gross Estate? . . . .

Number Five, whether the Trustee and executor failed to communicate with the Plaintiff beneficiary fully and timely during the administration of the Trust and the Estate? . . . .

Number Six, whether the Trustee and Executor failed to select a favorable fiscal tax year for the Estate? . . . . Number Seven, whether the Trustee and Executor failed to file a timely fiduciary income tax return. . . .

Number Eight, whether the Trustee and Executor improperly entered into a lease of the Dyer County farm without the Plaintiff's consent at the Decedent's death? . . . . Number Nine,

-15-

> whether the Trustee failed to review and formulate a plan to diversify Trust assets after the date of the Decedent's death? . . . .
>
> After comparing the issues, the Court was able to extrapolate from its notes the [First] Probate [Case] Petition with those in the [Second Probate Case] Complaint. [I]t appears that the issues presented in the [Second Probate Case] Complaint are the same issues heard in the [First] Probate proceeding. The Court so finds.

Regarding the second element of collateral estoppel, the probate court went on to find that "[t]he parties litigated in the [First] Probate [Case] proceeding and this Court decided all of the claims . . . alleged in the [Second Probate Case] Complaint as well as their underlying issues[.]"

In considering the applicability of collateral estoppel, we have carefully reviewed the Petition filed in the First Probate Case, the transcript from the two-day trial in the First Probate Case and the trial court's ruling therein, the Complaint filed in the Second Probate Case, and the trial court's ruling regarding the collateral estoppel issue. From all of this, it is clear that in the First Probate Case, Mr. Glass sought only the reduction/elimination of the $49,000 executor fee paid to SunTrust as executor. Certainly, Mr. Glass raised as grounds for the urged reduction/elimination, SunTrust's alleged mishandling of the Estate–namely, its failure to avoid probate, its failure to elect a fiscal year-end, its failure to timely distribute Trust assets, and its leasing of farmland without Mr. Glass' consent. The conduct alleged in the First Probate Case clearly forms the basis for the allegations set forth in the Complaint in the Second Probate Case. However, that the same conduct was considered does not satisfy the "identity of issues" element of collateral estoppel. "The doctrine of collateral estoppel requires that the issue to be precluded in the present case is identical, not merely similar, to the issue decided in the earlier action." *Reid v. State*, Nos. M2009-00128-CCA-R3-PD, M2009-00360-CCA-R3-PD, M2009-01557-CCA-R3-PD, 2011 WL 3444171, at *30 (Tenn. Crim. App. Aug. 8, 2011) (citing *Beaty*, 15 S.W.3d at 827) *perm. app. granted* (Tenn. Jan. 11, 2012). "Moreover, the applicable legal standards involved must also be identical." *Id.* (citing *Beaty*, 15 S.W.3d at 827). "'Different legal standards as applied to the same set of facts create different issues.'" *Id.* (citing *Beaty*, 15 S.W.3d at 827).

In the First Probate Case, SunTrust's alleged misconduct was discussed in the context of determining whether SunTrust's services and/or extraordinary services warranted a $49,000 fee. However, the case primarily focused on calculations pursuant to a fee schedule, and there was no consideration or determination of whether the alleged misconduct supported stand-alone theories of recovery–specifically, breach of trust, breach of fiduciary duty,

-16-

mismanagement, negligence, or breach of duty to diversify. A determination of misconduct was not necessary to the resolution of the fee issue, as the fee could have been deemed reasonable notwithstanding errors related to the handling of the Estate.

Additionally, the evidence before this Court raises concern regarding whether Mr. Glass "had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded." *State v. Thompson*, 285 S.W.3d at 848. At the First Probate Case trial, SunTrust's counsel stated, "The trust is not before the Court today. The trust has not been joined as a party in this action. . . . So in a nutshell, [Mr. Glass] is asking you to rule . . . against an entity that is not even before the Court, which is the trust." Moreover, during the First Probate Case trial, when SunTrust's counsel attempted to question Mr. Glass regarding the allegedly-mishandled leasing of decedent's farmland, the probate court stated that it was "not going to try that here[,]" and that it would consider the evidence only as it related to SunTrust's fee for its involvement in that litigation.

For these reasons, we conclude that Defendants failed to demonstrate that the First Probate Case and the Second Probate Case concerned identical issues and that Mr. Glass had a full and fair opportunity in the prior suit to litigate the issues Defendants now seek to preclude. Accordingly, we reverse the trial court's grant of summary judgment to Defendants on the basis of collateral estoppel.

## B.  *Res Judicata*

Having found that Mr. Glass' Complaint was erroneously found to be precluded due to collateral estoppel, we must now consider whether the Complaint was, nonetheless, rightly barred by res judicata. "The doctrine of res judicata bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were *or could have been litigated* in the former suit." *Creech v. Addington*, 281 S.W.3d 363 (Tenn. 2009) (citing *Massengill*, 738 S.W.2d at 631) (emphasis added). The purposes of the doctrine include promoting finality in litigation, preventing inconsistent judgments, conserving legal resources, and protecting litigants from the cost of multiple lawsuits. *Id.* (citing *Sweatt v. Tenn. Dep't of Corr.*, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002)).

> Parties asserting a res judicata defense must demonstrate (1) that a court of competent jurisdiction rendered the prior judgment, (2) that the prior judgment was final and on the merits, (3) that both proceedings involved the same parties or their privies, and (4) that both proceedings involved the same cause of action.

*Young v. Barrow*, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003) (citing *Lee v. Hall*, 790 S.W.2d

293, 294 (Tenn. Ct. App. 1990)).

That the judgment in the First Probate Case was rendered by a court of competent jurisdiction is not contested. Therefore, to be entitled to a summary judgment, Defendants must demonstrate that (1) the judgment in the First Probate case was final and on the merits, (2) both cases involved the parties or their privies, and (3) both cases involved the same cause of action.

## Same Parties or Privies

"In the context of . . . res judicata . . . , the concept of privity relates to the subject matter of the litigation, not to the relationship between the parties themselves." ***State ex rel. Cihlar v. Crawford***, 39 S.W.3d 172, 180 (Tenn. Ct. App. 2000) (citations omitted). "Privity connotes an identity of interest, that is, a mutual or successive interest to the same rights." ***Id.*** (citations omitted) (declining to invoke res judicata in a parentage action where the State's interest–pursuing justice and reducing entry into the welfare system–was only "related" and not "identical" to the parent's interest–securing rights stemming from the parent-child relationship).

It is undisputed that neither SunTrust Bank nor SunTrust as Trustee were named parties to the First Probate Case, which involved SunTrust as Executor. However, Defendants argue, and the trial court found, that SunTrust Bank and SunTrust as Trustee are in privity with SunTrust as Executor for purposes of res judicata. Specifically, in resolving the res judicata issue, the probate court ruled orally, regarding privity, as follows:[14]

> [Mr. Glass] argued that only one of the parties in this lawsuit was before in the Court in the [First] Probate [Case] proceeding. That is SunTrust in its capacity as Executor. SunTrust admitted that SunTrust, the Executor, was before this Court in the Probate proceeding but proffered that SunTrust is in priv[it]y with itself and is, in fact, the same entity. Thus, the requirement of the same parties in both actions is satisfied.
>
> . . . .
>
> [T]his Court finds that SunTrust, the Executor, is essentially the same party as SunTrust, the Trustee, and SunTrust, the entity. Further SunTrust is in privity

---

[14]These statements are taken from the November 2, 2010 transcript which was incorporated into the November 12, 2010 order granting Defendants' motion to dismiss, which was incorporated into its ruling granting summary judgment.

with itself."

On appeal, Defendants contend that "Defendant, whether performing banking functions, or serving as an executor, or serving as trustee, is the same person or entity. Any judgment against Defendant, whether as a trustee or as an executor, is against Defendant and would be paid by Defendant. Obviously, Defendant is in privity with itself."[15]

We disagree. Even if Defendants are correct that SunTrust Bank, SunTrust as Executor and SunTrust as Trustee are the same entity, privity considers the entities' relationship *to the litigation*, not their relationship *to one another*. Defendants have wholly failed to demonstrate that SunTrust Bank and SunTrust as Trustee share a similar interest with SunTrust as Executor in litigation naming only SunTrust as Executor as a defendant such that Mr. Glass could have asserted his claims against SunTrust Bank and SunTrust as Trustee in the First Probate Case.. As such, Defendants have failed to demonstrate their right to judgment as a matter of law with regard to res judicata. Accordingly, we reverse the trial court's grant of summary judgment to Defendants on the basis of res judicata.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the probate court and we remand for further proceedings. Costs of this appeal are taxed to Appellees, SunTrust Bank; SunTrust Bank, Trustee of the Ann Haskins Whitson Glass Trust; SunTrust Bank, Executor of the Estate of Ann Haskins Whitson Glass.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[15]Defendants' "Statement of Material Facts" included the following statements:

The same parties (or their privies) are involved in both the First Probate Case Petition and the Second Probate Case Complaint.
. . . .
SunTrust Bank, SunTrust Bank, Trustee of the Ann Haskins Whitson Glass Trust, and SunTrust Bank, Executor of the Estate of Ann Haskins Whitson Glass are the same party and are in privity with itself.
Defendant was a party in both the First Probate Case Petition and the Second Probate Case Complaint.

However, as stated above, we are not bound by legal conclusions disguised as "facts."